STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
DOCKET NO. BCD-CV-17-11 ✓

PAMELA W. GLEICHMAN, et al.,      )
                                  )
            Plaintiffs,           )      **ORDER ON DEFENDANTS ROSA**
                                  )      **SCARCELLI AND PRESERVATION**
v.                                )      **HOLDINGS, LLC'S SECOND**
                                  )      **MOTION FOR SUMMARY**
ROSA SCARCELLI, et al.,           )      **JUDGMENT**
                                  )
            Defendants.           )

Pending before the Court is Defendants Rosa Scarcelli and Preservation Holdings, LLC's (the "Scarcelli Defendants") and Stanford Management, LLC ("Stanford") and Acadia Maintenance, LLC's ("Acadia") (collectively the "Companies") second motions for summary judgment, seeking summary judgment in their favor on all remaining counts in Plaintiff's Second Verified Amended Complaint (the "Complaint"). Plaintiffs oppose the motion. The Court heard oral argument on the motion on January 9, 2019. The Scarcelli Defendants were represented by G. Toby Dillworth, Esq., the Entity Defendants were represented by James Wagner, Esq., and Plaintiffs were represented by John Campbell, Esq.

## BACKGROUND

Plaintiffs are husband and wife; Ms. Scarcelli is Ms. Gleichman's daughter and Mr. Norberg's stepdaughter. (Def's Supp'g S.M.F. ¶ 3.) Ms. Gleichman founded Stanford and Acadia. (Pl's Add'l S.M.F. ¶ 1.) Ms. Scarcelli is now the majority member and manager of both Companies. (Def's Supp'g S.M.F. ¶¶ 4, 10.) Ms. Gleichman and Mr. Norberg allege that Ms. Scarcelli has committed many torts against them and has failed to manage the Companies consistent with the operating agreements for those entities or the Maine Limited Liability Company Act. *See* 31 M.R.S. § 1501.

1

It is undisputed that Mr. Norberg holds a minority membership interest in Stanford in his capacity as Trustee of the SNH Trust (SNH Trust being the actual minority member of Stanford). (Def's Supp'g S.M.F. ¶¶ 5, 8.) The Court has previously ruled that there is a genuine factual issue as to whether Ms. Gleichman holds a minority membership interest in Acadia. (*See* Court's Combined Order on Motions for Partial Summary Judgment (the "Prior Order"), Nov. 2, 2017, at 20.) Defendants do not ask the Court to revisit that ruling in the instant motion. (Scarcelli Def's Mot. Summ. J. 12 n. 8.) Plaintiffs have no interest in Defendant Preservation Holdings, but allege that Ms. Scarcelli has used this entity to harm them. (Pl's Compl. ¶¶ 138-140.)

The Complaint pleads twenty-three counts against the Defendants over the course of 290 paragraphs of allegations. Two counts were dismissed or adjudged on the pleadings prior to transfer to the Business and Consumer Court, and the Prior Order entered summary judgment in Defendants' favor on several more counts. The remaining counts have not been the subject of dispositive motions. For the sake of convenience and ease of analysis, the Court divides the remaining counts into two categories: the "Individual Claims" and the "Entity Claims." These are not terms of art and there is in fact substantial overlap between what is alleged against Ms. Scarcelli with respect to her management of the Companies and what is alleged to be her general wrongful behavior toward the Plaintiffs.

Plaintiffs' remaining Individual Claims seek a declaration as to illegality and/or commercially unreasonable nature of auction and takeover of General Holdings, Inc. (f/k/a Gleichman & Co.) (Count I) and conversion of Gleichman & Co. stock (Count VIII), negligent infliction of emotional distress (Count II), intentional infliction of emotional distress (Count III), negligent misrepresentation (Count XII), intentional misrepresentation (Count XIII), accounting as to Preservation Holdings (Count XXI), and breach of fiduciary duties, champerty, and

2

interference in connection with purchasing and collecting JMB Capital debt (Count XXII), and declaratory judgment as to termination of contracts (Count XXIII). Only Counts I, XXI, and XXII state claims against Preservation Holdings.

Plaintiffs remaining Entity Claims claim a breach of fiduciary duties (derivative action) (Count IV), oppression and breach of fiduciary duties (owed to Ms. Gleichman, Mr. Norberg, and SNH Trust) (Count V), injunction and/or dissolution of Stanford (Count VI), tortious interference (Count XIV), breach of contract (Count XV), and accounting as to Stanford and Acadia (Count XX). The Prior Order granted partial summary judgment in favor of Defendants on Counts IV-VI: Mr. Norberg's direct and derivative claims against Ms. Scarcelli with respect to her management of Stanford, in his capacity as Trustee of the SNH Trust, were limited to those causes of action and allegations that arose after October 30, 2013[1] and Ms. Gleichman was adjudicated to lack standing to pursue claims relating to Ms. Scarcelli's management of Stanford. Ms. Gleichman's direct and derivative claims against Ms. Scarcelli with respect to her management of Acadia survived summary judgment unscathed, subject to her proving that she indeed is a member of that LLC.

## DISCUSSION

I.   Individual Claims

a.   Emotional Distress Claims

Plaintiffs have pleaded both negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED") against Ms. Scarcelli. A claim for NIED requires proof of the following elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized

---

[1] As amended by the Court's Order on Plaintiffs' Motion for Partial Reconsideration entered March 2, 2018.

3

community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable [person] could be expected to endure it.

*Curtis v. Porter*, 2001 ME 158, ¶ 10, 748 A.2d 18.

The elements of a claim of negligent infliction of emotional distress are similar to most negligence torts: a plaintiff must set forth facts from which it could be concluded that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm.

*Id.* ¶ 18. However, the determination of duty in a NIED claim is not generated by traditional concepts of foreseeability because although a person has a duty to reasonably avoid causing physical harm to others, there is no comparable duty to avoid negligently causing emotional harm. *Id.* The Law Court has thus recognized only two categories under which a person has a duty to avoid causing emotional harm to others: (1) "bystander liability actions," not relevant here, and (2) circumstances in which a "special relationship" exists between the plaintiff and the defendant. *Id.* ¶ 19. NIED, liked IIED, also "requires proof of severe emotional distress." *Id.* ¶ 20.

Ms. Scarcelli argues that Plaintiffs have failed to adduce evidence of severe emotional distress sufficient to recover for either IIED or NIED. Ms. Scarcelli further argues that the behavior complained of by Plaintiffs is insufficiently extreme and outrageous to recover in IIED and that the lack of a special relationship between Ms. Scarcelli and Plaintiffs forecloses a claim of NIED. Plaintiffs respond that there is enough evidence of emotional distress, extreme and outrageous conduct, and a "special relationship" to survive summary judgment and that the jury should be allowed to decide whether they have proved IIED and NIED.

Ms. Scarcelli is entitled to summary judgment on both claims because neither Ms. Gleichman nor Mr. Norberg have adduced sufficient evidence of severe emotional distress.

4

"[E]stablishing that a plaintiff's emotional suffering qualifies as 'severe' normally requires proof of manifestations of the emotional harm such as 'shock, illness or other bodily harm' unless the defendant's conduct is found to have been so extreme and outrageous that proof of bodily harm is not needed." *Curtis*, 2001 ME 158, ¶ 21, 748 A.2d 18 (quoting Restatement (Second) of Torts § 46 cmt. k). The exception to this general rule is where "the defendant's conduct was so extreme and outrageous that it can be inferred that no reasonable person could endure the emotional response the conduct would naturally generate." *Id.* ¶ 22. The illustrations from Restatement (Second) of Torts § 46 cmt. k cited by the Law Court in *Curtis* show that to be able to infer severe emotional injury, the conduct must be very extreme indeed: e.g., (1) a police officer telling an arrestee that her child is dying in a hospital and the arrestee cannot be released to be with her child at the hospital until she confesses to a crime or (2) the defendant organizes a mob to come to plaintiff's home at night and tells plaintiff that if he does not leave town in ten days the mob will return and lynch him. *Curtis*, 2001 ME 158, ¶ 21 n.3, 748 A.2d 18 (quoting Restatement (Second) of Torts § 46 cmt. k). Plaintiffs have not adduced evidence of anything approaching this level of outrageousness. (*See* Pl's Add'l S.M.F. ¶¶ 88-99.) As explained in more detail below, Plaintiffs' evidence of extreme and outrageous behavior on the part of Ms. Scarcelli is essentially limited to her refusal to pay them money they claim they are owed. Plaintiffs may ultimately prove that Ms. Scarcelli has wrongfully withheld money to which they are entitled, but as a matter of law, this is not sufficiently "extreme and outrageous" conduct from which the Court can infer resulting severe emotional harm.

Turning to the evidence of emotional harm adduced by the Plaintiffs, the Court concludes that there is no evidence of "objective symptoms demonstrating shock, illness, or other bodily harm." *Id.* ¶ 23. "In most instances, proof of objective symptoms will require expert testimony to

establish that the plaintiff's emotional injury qualifies for a diagnosis such as shock, post-traumatic stress disorder, or some other recognized medical or psychological disease or disorder." *Id.* Here, Plaintiffs rely exclusively on their own affidavits for evidence of severe emotional distress. *(See* Pl's Add'l S.M.F. ¶¶ 88-105.) The only evidence of a diagnosis is Mr. Norberg's depression, and the evidence of that diagnosis is hearsay. *(See, e.g.,* Def's Reply to Pl's Add'l S.M.F. ¶¶ 102-1-5.)

"Recent Law Court decisions have endorsed the trial court's role as gatekeeper regarding IIED claims, meaning to evaluate an IIED claim to determine whether the facts alleged could reasonably justify a verdict for the plaintiff." *Temm v. LPL Fin. LLC*, No. BCD-CV-16-14, 2016 Me. Super. LEXIS 68, at *7 (Bus. & Consumer Ct. Apr. 29, 2016). "[I]t is for the Court to determine, in the first instance whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery . . . ." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842 (quoting *Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 616 (Me. 1996)). Plaintiffs' evidence[1] of atrocious behavior is essentially that Ms. Scarcelli wrongfully withheld money she owed Plaintiffs under the operating agreements for Stanford and Acadia. (Pl's Add'l S.M.F. ¶ 92.) As explained below, Plaintiffs have raised a dispute of fact on this ultimate issue, but regardless, failure to pay monies owed is simply not conduct "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." *Curtis*, 2001 ME 158, ¶ 10, 748 A.2d 18. The cases cited by Plaintiffs are factually distinguishable. *Latremore v. Latremore*, 584 A.2d 626, 630 (Me. 1990) affirmed a

---

[1] Throughout their statement of additional facts and memorandum opposing summary judgment, Plaintiffs allude to Ms. Scarcelli's "innumerable" or "numerous" acts directed toward Plaintiffs with the intent to cause them emotional harm. (Pl's Add'l S.M.F. ¶¶ 92-94; Pl's Opp'n Mot. Summ. J. 4, ¶ 8.) To survive a defendant's motion for summary judgment, a plaintiff must create a genuine dispute of fact by adducing prima facie evidence of the elements of her claim in the summary judgment record. *Savell v. Duddy*, 2016 ME 139, ¶ 18, 147 A.3d 1179. If Plaintiffs indeed have additional evidence of "extreme and outrageous" conduct by Ms. Scarcelli it was their burden to present that evidence with record citations in their additional or opposing statements of material facts. They cannot create a factual dispute by merely denying the facts adduced by Defendants and insinuating that additional evidence of outrageous behavior will be presented in proof of their claim at trial.

6

jury verdict on an IIED claim where there was evidence that the defendant, the plaintiffs' adult child, "went far beyond a fair reading of the [lease] agreement by demanding that his parents pay up to $ 3,000 per month in rent for the large apartment and by threatening to evict them[,]" "continued with his demands and threats even though he knew that his parents were aged and . . . in poor health[,]" and "made a number of vicious remarks to his father regarding his father's mental condition, apparently without justification, and even attempted to elicit his sister's assistance in having his father declared mentally incompetent." *Rubin v. Matthews Int'l Corp.*, 503 A.2d 694, 696, 699-700 (Me. 1986) vacated a dismissal of an IIED claim where the plaintiff alleged that the defendant was notified that a memorial stone for his deceased mother was to be provided for an unveiling ceremony scheduled to occur on a particular date, was aware of the religious significance of the event, agreed to have the memorial stone delivered prior to the time for the unveiling, and made repeated misrepresentations of a timely delivery of the monument for the unveiling ceremony. *Rubin* is thus both factually and procedurally distinguishable as it dealt with a very different factual context and was decided on a different procedural posture. *See id.*

Plaintiffs also highlight a specific episode in which Ms. Scarcelli withheld funds from Ms. Gleichman while she happened to be abroad such that she had to borrow money from her friends to pay her hotel bill and other travel expenses. (Pl's Add'l S.M.F. ¶¶ 93-98.) Again, this is not "atrocious, utterly intolerable" behavior, even if Plaintiffs eventually prove that the funds were wrongfully withheld. Finally, Plaintiffs also claim that Ms. Scarcelli has denied Plaintiffs access to their three grandchildren. (Pl's Add'l S.M.F. ¶ 92(h)). The Law Court has explicitly held that dysfunctional family relationships are not sufficient to satisfy the extreme and outrageous conduct element of an emotional distress claims. *See Lyman v. Huber*, 2010 ME 139, ¶ 25, 10 A.3d 707.

7

Finally, as to Plaintiffs' claim for NIED, the Court concludes that there is no genuine dispute that there was no "special relationship," i.e. fiduciary relationship, *see Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶ 22, 819 A.2d 1014, between the parties sufficient to give rise to a duty to reasonably prevent emotional harm. Plaintiffs' claim that Ms. Scarcelli stood in a fiduciary capacity with respect to them is repeated throughout their opposition to the instant motion in support of many of their causes of action, so the Court's ruling on this issue is relevant to not just Plaintiff's NIED claim but multiple counts discussed below. The Court concludes that the undisputed facts cannot support a finding that Ms. Scarcelli owed fiduciary duties to the Plaintiffs at common law.' The elements of a fiduciary relationship are (1) the actual placing of trust and confidence by one party in another and (2) great disparity of power and influence between the parties at issue. *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 7, 54 A.3d 710. Plaintiffs continually highlight the family relation between the parties, but family members do not stand in a fiduciary relationship to one another without more. *See Moulton v. Moulton*, 1998 ME 31, ¶ 5, 707 A.2d 74. Although a "family tie" can "approximat[e]" a fiduciary relationship, it must nonetheless "induc[e] the trusting party to relax the care and vigilance ordinarily exercised." *Bryan R. v. Watchtower Bible Soc.*, 1999 ME 144, ¶ 18, 738 A.2d 839. The undisputed facts show that Plaintiffs have mistrusted Ms. Scarcelli for many years. The mother-daughter relationship between these parties was tragically, but hopefully not permanently, ruptured eleven years ago or around 2008. (Def's Supp'g S.M.F. ¶ 42; Pl's Opp'g S.M.F. ¶ 42.) The parties were in litigation by 2012. (Def's Supp'g

---

' As discussed in more detail below, Ms. Scarcelli's status as the member-manager of Stanford and Acadia make her a fiduciary to the LLCs (and arguably the members) in the context of her management of the companies. *See* 31 M.R.S. § 1559(1),(3). However, the Court declines to rule that her fiduciary duties in that capacity are so expansive as to impose a duty to reasonably avoid causing emotional harm to the Plaintiffs based only on their status as members of the companies. Furthermore, Ms. Scarcelli's position as member-manager of Stanford does not make her a fiduciary for Mr. Norberg in his personal capacity: Mr. Norberg the person is not a member of Stanford, the SNH Trust of which he is a trustee is a member. (Def's Supp'g S.M.F. ¶ 5.) Trusts cannot suffer emotional distress. Any emotional distress Mr. Norberg has suffered personally is outside the scope of Ms. Scarcelli's fiduciary duties to the LLC or its members.

S.M.F. ¶ 43.) Finally, Ms. Gleichman is a sophisticated businessperson in her own right. (*See* Pl's Add'l S.M.F. ¶¶ 1, 12-13, 15-16.) There is no "great disparity of power and influence" between Ms. Scarcelli and Ms. Gleichman. *Ramsey*, 2012 ME 113, ¶ 7, 54 A.3d 710. Any power imbalance is a product of Ms. Scarcelli's status as majority member and manager of Stanford and Acadia, of which Ms. Gleichman is the income beneficiary of the minority member and individually the minority member, respectively. Plaintiffs implicitly concede as much. (*See* Pl's Add'l S.M.F. ¶¶ 111-112.) Her cause of action, if any, is pursuant to a breach of the operating agreement of those entities or Ms. Scarcelli's violation of her statutory obligations under Maine's Limited Liability Company Act. No reasonable juror could determine that a fiduciary relationship arose between Ms. Scarcelli and Plaintiffs at common law.

In sum, for the foregoing reasons, the Court grants Defendants' motion for partial summary judgment as to Count II and Count III of the Complaint. Summary judgment will be entered in favor of the Defendants on those counts.

b. Misrepresentation Claims

Plaintiffs bring counts for both negligent misrepresentation (Count XII) and intentional misrepresentation (Count XIII) against Ms. Scarcelli based on statements she made prior to October 2008 to induce Ms. Gleichman to give her a controlling membership interests in the Companies. (Def's Supp'g S.M.F. ¶¶ 132-138.) Ms. Scarcelli responds that both counts are barred as untimely under the relevant six-year statute of limitations. Plaintiffs respond that the statute of limitations runs from when the fraud was discovered and therefore has not run because they have generated a genuine dispute on that issue. (Def's Opp'g S.M.F. ¶ 116.)

Pursuant to 14 M.R.S. § 752, "all civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards," subject to certain exceptions. Plaintiffs do not dispute

9

that a six-year statute of limitations applies to these misrepresentation counts, but counter that under Maine case law and by operation of 14 M.R.S. § 859, the statute is tolled until the fraud is discovered, i.e. that is when the "cause of action accrues" in the parlance of section 752. *See Kobritz v. Severance*, 2007 ME 3, ¶ 13, 912 A.2d 1237 (citing 14 M.R.S. § 859).

As a threshold matter, "section 859 extends only to causes of action sounding in fraud or fraudulent concealment." *Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶ 33, 147 A.3d 824. Because "a negligent misrepresentation claim does not require proof of intentional or reckless fault and thus does not sound in fraud . . . such a claim does not benefit from the extended statute of limitations set forth in section 859." *Id.* The limitations period for actions for negligent misrepresentation run from the time of the alleged misrepresentation, which in this case is no later than 2008, placing the claim outside the six-year statute of limitations of section 752. Ms. Scarcelli is entitled to an entry of summary judgment in her favor on Count XII of the Complaint because the action is barred by the relevant statute of limitations.

Turning to the claim of intentional misrepresentation, Plaintiffs are correct that section 859 and the relevant case law toll the six-year statute of limitations until the fraud is discovered or reasonably could have been discovered. However, this begs the question of whether there is a genuine factual dispute with regards to when the alleged fraud was discovered. The fraudulent acts in this case relate to certain promises that Ms. Gleichman claims Ms. Scarcelli made to her to induce her to gift her daughter a controlling interest in Stanford and Acadia sometime prior to October 2008. (Def's Supp'g S.M.F. ¶¶ 132-138.) Although Plaintiffs now claim they were not aware that Ms. Scarcelli was not living up to her supposed promises until much later, the sworn statements in their Verified Complaint lead inexorably to the conclusion that this is a post hoc attempt to salvage a stale claim. *See Estate of Smith v. Salvesen*, 2016 ME 100, ¶ 12, 143 A.3d 780

10

("In summary judgment motion practice, a party will not be permitted to create an issue of material fact . . . simply by submitting an affidavit disputing his own prior sworn testimony, unless he provides a satisfactory explanation of why the testimony is changed.") (quotation omitted). (*See* Def's Reply to Pl's Add'l S.M.F. ¶¶ 114-118.) Thus, even if the Court applies the "discovery rule" urged by Plaintiffs, there is no genuine factual dispute that the statute of limitations has already run.

### c. Counts Relating to Gleichman & Co./ General Holdings and Preservation Holdings

Count I seeks a declaration as to illegality and/or commercially unreasonable nature of auction and takeover of General Holdings, Inc. (f/k/a Gleichman & Co.). By way of background, Gleichman & Co., Inc. was a real estate development company that owned general partnership interests in forty-eight housing limited partnerships; Stanford and Acadia have property manager and caretaker contracts for each property owned by those partnerships. (Def's Supp'g S.M.F. ¶¶ 44, 46.) At some point, Ms. Gleichman pledged almost all her assets, including all of her interest in the limited partnerships and Gleichman & Co., in an attempt to secure debtor financing. (Def's Supp'g S.M.F. ¶ 51.) Mr. Norberg and Ms. Gleichman procured a loan on December 30, 2010 from JMB Capital Masters Fund, L.P. ("JMB") guaranteed by Gleichman & Co., GN Holdings, and another entity not at issue in this litigation; Ms. Gleichman pledged her entire interest in Gleichman & Co. as security for the loan. (Def's Supp'g S.M.F. ¶¶ 52-56.) Sometime thereafter, Ms. Scarcelli formed a LLC called Preservation Holdings, LLC, which subsequently acquired JMB's loan to Ms. Gleichman and became the secured party under the loan. (Def's Supp'g S.M.F. ¶¶ 64, 66, 68.) By 2012, Ms. Gleichman had defaulted on the loan and Preservation Holdings filed suit to recover its collateral. (Def's Supp'g S.M.F. ¶¶ 71, 73.) Preservation Holdings prevailed on summary

11

judgment in that action; Preservation Holdings thereafter took ownership of Gleichman & Co. and changed Gleichman & Co.'s name to General Holdings, Inc. (Def's Supp'g S.M.F. ¶¶ 74-78.)

Preservation Holdings proceeded to liquidate the stock interests in Gleichman & Co./ General Holdings through a public sale/ auction to be held on March 20, 2014. (Def's Supp'g S.M.F. ¶ 79.)· The auction was publicly noticed and Ms. Gleichman, as the debtor, received actual notice of the sale. (Def's Supp'g S.M.F. ¶¶ 80-81, 83-86.) Preservation Holdings, the only bidder, made a $10,000 credit bid thereby winning the auction and whatever remained of Gleichman & Co./ General Holdings was transferred to Preservation Holdings. (Def's Supp'g S.M.F. ¶ 89.) The public sale was conducted by Mr. Daniel Cummings, Esq., Preservation Holding's attorney. (Def's Supp'g S.M.F. ¶ 87.)

Ms. Gleichman claims that if Ms. Scarcelli had not withheld the distributions Ms. Gleichman was entitled to under the operating agreements for Stanford and Acadia that Ms. Gleichman would have had the money to make payments due under the JMB loan, both before and after the loan was acquired by Preservation Holdings. (Pl's Add'l S.M.F. ¶ 79; Pl's Opp'g S.M.F. ¶¶ 71-72.) Ms. Gleichman also claims that she "was working things out with" JMB and had a plan to pay off the debt before Ms. Scarcelli somehow "insinuated herself into that arrangement" so that Ms. Scarcelli could instead buy the debt from JMB. (Pl's Add'l S.M.F. ¶¶ 78, 81-84.) The specifics of how Ms. Scarcelli was able to interfere in Ms. Gleichman's negotiations with JMB are not clear. (*See* Pl's Add'l S.M.F. ¶¶ 81-84.) Ms. Scarcelli's motivations in purchasing the JMB debt are genuinely disputed. (Def's Supp'g S.M.F. ¶ 63; Pl's Opp'g S.M.F. ¶ 63; Pl's Add'l S.M.F. ¶¶ 84, 87; Def's Reply to Pl's Add'l S.M.F. ¶¶ 84, 87.) Regardless, Ms. Scarcelli's subjective intent with

---

· Defendants' statement of material facts is not clear with regards to when the name change was effected and what this entity was called at the time of auction, and seems to use "Gleichman & Co." and "General Holdings" interchangeably to describe the entity during this period. (*Compare* Def's Supp'g S.M.F. ¶ 78 *with* Def's Supp'g S.M.F. ¶ 79, 85-86, 89, 90, 93.)

12

regard to Preservation Holding's purchase of the JMB debt (and subsequent foreclosure and purchase of General Holding's assets at auction) is immaterial to a determination of whether Preservation Holding's subsequent sale of the assets of General Holdings/ Gleichman & Co. was proper.

Defendants argue they are entitled to summary judgment on this count on its merits, claiming that Plaintiffs have not presented any facts from which it can be determined that there is a legal reason to invalidate the sale.[*] Plaintiffs do not raise any meaningful argument specific to Count I in their opposition to the instant motion, with the exception of one sentence which impugns Ms. Scarcelli's "reasons for buying the JMB claim and auctioning the valuable entity Gleichman & Co." (Pl's Opp'n Scarcelli Mot. Summ. J. 4 ¶ 6.) Even if Ms. Scarcelli's motivation in purchasing the JMB debt and auctioning General Holdings had nothing to do with preserving family assets and was exclusively for personal gain, this is not grounds for invalidating the purchase and subsequent auction. Otherwise, Plaintiffs merely dispute the facts Defendants rely upon in their motion for summary judgment as to Count I. A plaintiff must do to more to survive a defendant's motion for summary judgment, she must come forward with prima facie evidence to support each and every element of her claim.[†] *Savell v. Duddy*, 2016 ME 139, ¶ 18, 147 A.3d 1179. Based on the undisputed facts before the Court at the summary judgment hearing, Defendants would be entitled to a judgment as a matter of law on Count I. Summary judgment will be entered in favor of Defendants on that count.

---

[*] Defendants seem to assume that Plaintiffs have standing to bring this claim and that it presents a justiciable controversy sufficient to confer jurisdiction under Maine's declaratory judgment act.

[†] Although the Court concludes that Plaintiffs have failed to carry their burden on summary judgment under *Savell*, in the alternative, Defendants would also prevail on the merits. Plaintiffs' legal theory for invalidating the auction has already been rejected by the Law Court. *See Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶¶ 33-34, 133 A.3d 1021 (citing 32 M.R.S. § 285).

13

Count VIII states a claim for conversion of Gleichman & Co. stock arising out of Preservation Holdings' purchase at public sale of all shares of stock in that company subsequent to its purchase of the JMB debt, for which the stock of Gleichman & Co. was collateral. "The necessary elements to establish a claim for conversion are a showing that (1) the person claiming that his or her property was converted has a property interest in the property; (2) the person had the right to possession at the time of the alleged conversion; and (3) the party with the right to possession made a demand for its return that was denied by the holder." *Estate of Barron v. Shapiro & Morley, LLC*, 2017 ME 51, ¶ 14, 157 A.3d 769 (citing *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798). Defendants point out that it is undisputed that Ms. Gleichman did not have a right to possess the stock of Gleichman & Co./ General Holdings because she had pledged the stock as security for a debt, on which she subsequently defaulted. (Def's Supp'g S.M.F. ¶¶ 51-56, 71.) This notion goes essentially unchallenged by Plaintiffs in opposition, except to the extent that they suggest that their default under the loan agreement after Preservation Holdings purchased the debt from JMB was a result of Ms. Scarcelli's wrongful withholding of funds due them under the operating agreements of Stanford and Acadia. (Def's Opp'g S.M.F. ¶ 71.) Plaintiffs adduce no prima facie evidence of the elements of conversion. Defendants are entitled to summary judgment on Count VIII of the Complaint.

Count XXI seeks an accounting as to Preservation Holdings. At the oral argument, Plaintiffs clarified that they seek an equitable accounting, which is an "action for equitable relief against a person in a fiduciary relationship to recover profits taken in breach of the relationship." *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 38, 133 A.3d 1021. In other words, the existence of a fiduciary relationship is an essential element to the cause of action. *Id*. However, the Court has already concluded that Ms. Scarcelli had no fiduciary obligations to Plaintiffs arising

14

out of common law. Neither Ms. Gleichman nor Mr. Norberg have any interest in Preservation Holdings. On the undisputed record before the Court, Plaintiffs cannot prove an essential element—the existence of a fiduciary relationship—of their claim for equitable accounting of Preservation Holdings. Summary judgment will be entered in favor of Defendants on this Count.

Count XXII states three causes of action against Defendants with regards to Ms. Scarcelli's purchase and collection of the JMB debt: breach of fiduciary duties, champerty, and interference. Again, the undisputed facts show Ms. Scarcelli never owed Ms. Gleichman or Mr. Norberg fiduciary duties individually. Maine's criminal statute prohibiting champerty does not provide for a private right of action. *See* 17-A M.R.S. § 516. In any event, Maine law has not considered purchasing the assignment of a debt to be champerty since at least 1892. *See, e.g., Burnham v. Heselton*, 84 Me. 578, 588, 24 A. 955, 956 (1892); *New England Merchs. Nat'l Bank v. Herron*, 243 A.2d 722, 724 (Me. 1968). The elements a plaintiff must prove to prevail on a claim for tortious interference are: "(1) that a valid contract or prospective economic advantage existed, (2) that the defendant interfered with that contract or advantage through fraud or intimidation, and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104. Plaintiffs have not come forward with prima facie evidence of any element of this claim and instead merely intimate vague allusions to Ms. Scarcelli's malicious intent. (Pl's Add'l S.M.F. ¶ 84; Pl's Opp'g S.M.F. ¶ 63.) Their evidence of a valid contract or prospective economic advantage consists exclusively of Ms. Gleichman's claim that she was working things out with JMB; this at best describes preliminary negotiations, not a valid contract or prospective economic advantage. *See McClare v. Rocha*, 2014 ME 4, ¶ 20, 86 A.3d 22 ("Preliminary negotiations as to the terms of a future agreement do not constitute a contract.").

15

Count XXIII seeks a declaratory judgment as to the validity of Ms. Gleichman's termination of all management contracts with Stanford for properties of which she is general partner. This apparently happened on August 31, 2015. (Compl. ¶¶ 167-168, 286-290.) There is no evidence of how and whether the issue of the validity of Ms. Gleichman's termination of management contracts with Stanford for these properties presents a genuine controversy. *See Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, ¶ 4, 707 A.2d 384 (citing *Wagner v. Secretary of State*, 663 A.2d 564, 567 (Me. 1995)) (The Declaratory Judgments Act "may be invoked only where there is a genuine controversy."). Plaintiffs have thus failed to effectively invoke Maine's Declaratory Judgments Act. The Court thus enters summary judgment in favor of the Defendants on Count XXIII.

II.     Entity Claims

        a.   Direct and Derivative Actions for Closely-Held LLCs Under Maine Law

As a threshold matter, Defendants argue that neither Mr. Norberg (in his capacity as Trustee of the SNH Trust) nor Ms. Gleichman can bring derivative claims on behalf of Stanford and Acadia, respectively, because they are both closely-held LLCs. Their authority for this position is 31 M.R.S. § 1637 and *Beaudry v. Harding*, 2014 ME 126, ¶ 5, 104 A.3d 134. However, the stated authority does not support this proposition. Section 1637(3) allows the Court to treat a derivative action commenced by a member of a LLC as a direct action and order that recovery in either a direct or derivative action brought by a member be paid directly to the plaintiff or the LLC "to protect the interests of creditors or of other members." 31 M.R.S. § 1637(3)(A)-(B). Far from prohibiting derivative actions, "in the case of a closely held LLC, § 1637(2) dispenses with all of the prerequisites for a derivative action set forth in sections 1632-1636 unless specifically ordered by the court. Moreover, under section 1637(3)(A) a derivative action may be treated as a direct

action 'if justice requires.'" *Cianchette v. Cianchette*, No. CV-16-249, 2018 Me. Super. LEXIS 13, at \*34 (January 17, 2018). As noted by the Superior Court (*Warren, J.*) in the *Cianchette* case, *Beaudry* dealt with a plaintiff who was a former member of an administratively dissolved LLC who was trying to sue a third party—the LLC's erstwhile attorney—derivatively on behalf of the administratively dissolved LLC. *Id.* (citing *Beaudry*, 2014 ME 126, ¶ 5, 104 A.3d 134). *Beaudry* is thus distinguishable, while *Cianchette* is analogous.

At the oral argument, Defendants conceded that section 1637 could allow the Court to treat Plaintiffs' derivative actions as direct and order that any judgment be paid to Plaintiffs as opposed to the LLCs, but argued that the condition precedent for such treatment—"[i]f justice requires"— has not been satisfied. *See* 31 M.R.S. § 1637(3). However, this argument hinges on the merits of the Plaintiffs' claims, which are discussed below.

b.  Fiduciary Duties of Member-Managers of LLCs Under Maine Law

Defendants' next threshold argument is that Ms. Scarcelli did not owe fiduciary duties to Plaintiffs or either LLC pursuant to the operating agreement for each entity. Stanford's operating agreement provides that "[t]he business and affairs of the Company shall be managed under the direction and control of the Manager." (Def's Supp'g S.M.F. ¶ 18.) It further provides that the Manager has the right "to conduct any other business or activity whatsoever," so long as she does not compete with Stanford. (Def's Supp'g S.M.F. ¶ 20.) Defendants do not direct the Court's attention to any provision of the operating agreement that either waives or imposes fiduciary duties on the manager with respect to either the LLC or its other member. Instead, Defendants point out that Stanford's operating agreement provides the manager with authority to conduct the business affairs of the company and further provides that the manager shall not be liable to any member for any act performed, unless she is adjudicated to have not taken such an act in good faith. *See also*

17

31 M.R.S. § 1559(2). Defendants argue that this provision insulates Ms. Scarcelli from liability even if she did owe fiduciary duties to the LLC.

Under Maine's LLC Act, "a member not involved in the management of a limited liability company does not have a fiduciary duty to the limited liability company, or to any other member . . . ." 31 M.R.S. § 1559(3). The Act allows the members of a LLC to expand, restrict, or eliminate any duties, including fiduciary duties, in the operating agreement for the LLC. 31 M.R.S. § 1521(3)(A).⁷ In *Cianchette*, the court concluded that section 1559(3) imposes fiduciary duties on member-managers with respect to the company unless the duty is expressly waived in the LLC operating agreement. *Cianchette*, 2018 Me. Super. LEXIS 13, at *39. (citing 31 M.R.S. § 1559(3)). The court concluded that a very similar liability waiver was insufficient to waive the LLC-manager's fiduciary duties under 31 M.R.S. § 1521(3)(A). *Id.* at *40 ("Accordingly, while section 5.4.1 limits [the manager's] liability to instances of fraud, bad faith, or gross negligence, she is not entirely immunized by the LLC Agreement.").

In the absence of authority to the contrary and consistent with the doctrine of stare decisis the Court declines to deviate from the persuasive authority of its sister court in *Cianchette*. The undisputed facts establish that Ms. Scarcelli is the member-manager of Stanford and Acadia and that neither operating agreement for either entity expressly waives her fiduciary duties owed to those organizations. As discussed above, by operation of 31 M.R.S. § 1637(3)(A)-(B), Plaintiffs can pursue these claims against Ms. Scarcelli in the nature of direct claims even though they are technically derivative actions given that Ms. Scarcelli owes fiduciary duties to the companies and not necessarily the Plaintiffs. *See Cianchette*, 2018 Me. Super. LEXIS 13, at *34-40.

---

⁷ With the exception of the implied contractual covenant of good faith and fair dealing, which cannot be eliminated by the operating agreement.

The *Cianchette* court did not address whether 31 M.R.S. § 1559(3) also imposes fiduciary duties on a member-manager with respect to the other members of the LLC, in addition to the LLC itself. Plaintiffs here include only one conclusory sentence to the effect that Plaintiffs "also have claims based upon fiduciary duties running directly to Pam Gleichman and Karl Norberg as Trustee of the SNH Trust." (Pl's Opp'n Summ. J. 19.) Plaintiffs cite no authority for this position but instead transition into a rehash of their argument that a fiduciary duty arose at common law, owed by Ms. Scarcelli to Ms. Gleichman and Mr. Norberg. The Court concluded above that the undisputed facts preclude this theory. The Court will thus enter summary judgment in favor of Defendants on Count V of the Complaint because under the undisputed facts there is no evidence that Ms. Scarcelli had a common law fiduciary relationship with either Ms. Gleichman or Mr. Norberg. The sole basis for Plaintiffs' fiduciary duty claims is Ms. Scarcelli's statutorily-imposed duties to the companies which, as explained above, Plaintiffs may pursue derivatively on behalf of the companies and which the Court may treat as direct if justice requires. *See* 31 M.R.S. § 1637(3).

c. Genuine Issues of Material Fact Preclude Entry of Summary Judgment in Defendants' Favor on Count IV

Having concluded that Plaintiffs are not precluded from pursuing a claim for breach of fiduciary duty derivatively on behalf of the LLCs, the remaining issue is whether Plaintiffs have adduced prima facie evidence of breach and damages. Defendants argue that the undisputed facts demonstrate that Ms. Scarcelli could not breach her fiduciary duties by paying herself a high salary and withholding distributions because she was allowed to do so under the operating agreements.

Both operating agreements are silent on the issue of executive salaries, although they provide for a management fee to be paid to Ms. Scarcelli before the allocation of profit and loss. Defendants do not deny that the operating agreements provide for an annual sum of $25,000 per entity for management services to be paid to the manager. (Pl's Add'l S.M.F. ¶ 40; Def's Reply Pl's

19

Add'l S.M.F. ¶ 40.) Defendants point out that nonetheless the operating agreement does provide that "[u]nless approved by the Manager, no Member shall perform services for [Stanford] or be entitled to compensation for services performed for [Stanford] or be entitled to reimbursement for expenses." (Def's Supp'g S.M.F. ¶ 19.) The argument is that as manager Ms. Scarcelli had the authority to hire herself as president of Stanford and then set her own salary, and that this is entirely unrelated to the $50,000 she is paid by virtue of being manager of both LLCs pursuant to the operating agreements. Defendants acknowledge that it is Mr. Norberg's (in his capacity as Trustee) burden to create a dispute of fact on whether what Ms. Scarcelli has decided to pay herself is excessive, but argue that he cannot meet this burden based on the undisputed facts.

The operating agreements do address distributions to members. They provide that "[a]fter giving effect to the special allocations set forth in Section 4.4 . . . Profit or Loss . . . shall be allocated to the Members in Proportion to the Percentages." (Pl's Add'l S.M.F. ¶ 38.) They further provide that "the timing and amount of all distributions shall be determined by the Manager. *No Member shall be entitled to any preferential distributions from the Company* and, except as provided in this Agreement, *all distribution of profit to the Members shall be made in accordance with their respective percentages.*" (Pl's Add'l S.M.F. ¶ 39 (emphasis added).) Defendants argue that the undisputed facts demonstrate that Ms. Scarcelli has complied with these provisions and made all necessary distributions. They claim that Plaintiffs' calculations demonstrating a shortfall in their distributions are flawed and that any perceived shortfall can be explained by the fact that pursuant to charging orders entered in Maine Superior Court any distributions owed to Ms. Gleichman personally or the SNH Trust (of which she is the settlor and income beneficiary) are paid directly to Ms. Gleichman's creditors, who happen to include Preservation Holdings—the

20

entity Ms. Scarcelli formed to purchase the debt claim JMB had against Ms. Gleichman and then foreclosed on. (Def's Supp'g S.M.F. ¶¶ 64, 95-104.)

This factual milieu presents multiple genuine issues with respect to whether Ms. Scarcelli breached her fiduciary duties owed to both companies or has performed her managerial duties in good faith to the companies and their other member. First, as the Court indicated at oral argument, it has serious concerns with the notion that Ms. Scarcelli can pay herself a salary that is many times greater than the managerial fee explicitly contemplated in the operating agreements for the two entities. The operating agreements for the entities do seem to grant her the authority as the member-manager to hire herself and the Court is not inclined to consider the parol evidence offered by Plaintiffs that suggests that the managerial fee was meant to be the extent of Ms. Scarcelli's compensation for managing the Companies in any capacity, whether it be as manager or president. (*See* Pl's Add'l S.M.F. ¶¶ 18-20, 23, 34, 48.) It seems that Plaintiffs may not have got the result they thought they bargained for in the restated operating agreements for Stanford and Acadia after those documents were re-negotiated by the parties during and around the month of September 2008. (Pl's Add'l S.M.F. ¶ 21.) However, it is not the Court's job to re-write the operating agreement to protect their interests after the fact.

Nonetheless, Maine's LLC Act imposes at least two limits on the discretion afforded a member-manager notwithstanding the authority she may have under the operating agreement for the LLC: first, a fiduciary duty to the company, which may be waived expressly in the operating agreement, but was not done in the operating agreement for Stanford or Acadia; and second, a duty of good faith and fair dealing, which cannot be waived. *See* 31 M.R.S. §§ 1521(3)(A), 1559(3). The fact that Ms. Scarcelli has paid herself a salary that is not exclusively contemplated in the operating agreement, which otherwise provides for her compensation, raises a genuine issue as to

21

whether her decision to hire herself as president and set her own salary was undertaken with her own best interest in mind, or that of the company. More disturbingly, the evidence shows that in fact Ms. Scarcelli's salary has gone up and down year by year, and has not been the static amount that Defendants suggest it is. (*See* Def's Supp'g S.M.F. ¶¶ 13-14; Def's Opp'g S.M.F. ¶ 14.) Defendants offered a weak explanation for this at oral argument, claiming that in some years Ms. Scarcelli has had to pay herself to make up for shortfalls in her presidential salary from years prior. (Def's Reply to Pl's Add'l S.M.F. ¶ 50.) As the Court noted then, this does not sound like a salary. It sounds like unallocated distributions paid out of the companies' profits under the guise of a "presidential salary" to the majority member prior to the allocated distributions to which Plaintiffs are entitled a share proportional to their membership interests. Such distributions, whether called a "salary," "guarantee fee," or "preferred distribution" are explicitly disallowed by the operating agreements. (Pl's Add'l S.M.F. ¶ 39.) In other words, there is a more fundamental factual issue to be resolved before the question of whether Ms. Scarcelli's presidential salary is excessive—that is, whether it is even a "salary" at all.

Plaintiffs have also raised factual issues with regard to whether Ms. Scarcelli has breached her fiduciary duties to the companies more broadly by, inter alia, taking actions that have resulted in the companies losing value or put them out of compliance with state and federal regulations. (Pl's Add'l S.M.F. ¶¶ 69-73, 120; Def's Reply to Pl's Add'l S.M.F. ¶¶ 69-73, 120.)[*] Defendants do not explicitly argue that there is no dispute of fact on this issue, instead relying on the argument that Ms. Scarcelli did not owe the companies fiduciary duties or in any event cannot be held liable for breaching such duties. As this Court held in the Prior Order, Mr. Norberg as Trustee is

---

[*] The Court acknowledges Defendants' objections to the foundation for these facts and the format in which they were presented. However, at this stage, the Court cannot weigh the credibility of Ms. Gleichman and Mr. Norberg's assertions relating to Ms. Scarcelli's management of the companies. Defendants can attack Plaintiffs' credibility and expose the absence of a basis for their knowledge of mismanagement at trial.

22

foreclosed from re-litigating any acts taken by Ms. Scarcelli in her capacity as manager of Stanford prior to October 30, 2013. Ms. Gleichman is not so limited in her claim against Acadia, provided she can prove she is a member of that company—an issue on which there is a genuine factual controversy as found by this Court in the Prior Order. Ms. Scarcelli will of course enjoy the presumptive protection of the business judgment rule in the face of any such challenges to acts she has undertaken as manager of the companies. *See Rosenthal v. Rosenthal*, 543 A.2d 348, 353-54 (Me. 1988) (courts "have long recognized that it falls outside the proper judicial domain to inquire into and second-guess the prudence of particular business decisions honestly reached by those entrusted with the authority to determine what course of action best advances the well-being of the enterprise . . . . The business judgment rule does not, however, protect business decisions that result from fraud or bad faith.").

Defendants challenge the accuracy of Plaintiffs' damage calculations and the methodology of their expert, arguing that it relies on a misconception of the relationship between "guaranteed payments," income, and distributions. Plaintiffs will of course bear the burden of proving their damages to a reasonable probability at trial, and Defendants will be able to attack the methodology used by Plaintiffs at that time. But the issue of the amount of damages is a factual one and therefore generally cannot be resolved on summary judgment. *See, e.g., Carter v. Williams*, 2002 ME 50, ¶ 27, 792 A.2d 1093; *Merrill Trust Co. v. State*, 417 A.2d 435, 440-41(Me. 1980). Plaintiffs have put forward evidence of damages suffered as a result of Ms. Scarcelli's breach of fiduciary duties, which, if proved, would entitle them to recover.

### d. Breach of Contract and Remaining Claims

Plaintiffs barely survive summary judgment on Count XV, which states a claim for breach of contract. Defendants argue, reasonably, that based on the Complaint and record, "it is not

23

entirely clear which alleged contracts Plaintiffs are pursuing under this theory." (Scarcelli Def's Mot. Summ. J. 17.) Defendants then argue that, to the extent Plaintiffs are relying on the operating agreements, Plaintiffs fail to articulate the contractual commitments allegedly breached and there is no evidence of causation linking Ms. Scarcelli's alleged breach to Plaintiffs' alleged damages.

Plaintiffs do not engage this argument head-on in their opposing memorandum, but they do reference paragraphs in their statement of material fact for the proposition that Ms. Scarcelli "ignor[ed] the limitations in the Operating Agreement as to her salary or management fees and her obligations to account and provide[] access to books and records." (Pl's Opp'n Scarcelli Def's Mot. Summ. J. 4 ¶ 7.) There are explicit references in their opposition to Ms. Scarcelli's contractual obligation to act in good faith in her capacity as manager of each entity. In sum, taken together, Plaintiffs have just met their burden as plaintiffs opposing summary judgment to adduce evidence of the elements of breach of contract. In particular, even in the absence of cogent argument to the contrary, the Court is not convinced there is no genuine dispute of fact as to whether Ms. Scarcelli has performed all of her duties and obligations as manager of the Companies in good faith. M.R. Civ. P. 56(c) (movant's burden to show "there is no genuine issue as to any material fact"). *See Woods, Div. of Hesston Corp. v. Bath Indus. Sales, Inc.*, 549 A.2d 1129, 1132 (Me. 1988) ("Good faith is a question of fact . . . ."). *Cf. Chartier v. Farm Family Life Ins. Co.*, 2015 ME 29, ¶ 7, 113 A.3d 234 ("[A] failure to comply in good faith with Maine's Uniform Commercial Code (U.C.C.) or to perform under a regulated contract may constitute a breach of contract."); *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 652 (Me. 1993) (same rule for insurance contracts which likewise have an implied duty of good faith).

The same cannot be said for the other counts that Plaintiffs elected not to oppose in their response to Defendants' motion. Defendants point out that a claim for tortious interference (such

24

as that stated in Count XIV) "protects a person when someone else, not a party to the contract or other economic relation, interferes." *Beaudoin v. Community Partners, Inc.*, No. CV-05-330, 2006 Me. Super. LEXIS 291, *3 (March 3, 2006) (citing W. Prosser & W. Keeton, *The Law of Torts* §129 at 978 (5th ed. 1984); Restatement (Second) of Torts § 766); *see also Fisk v. Mid Coast Presbyterian Church*, No. 2:16-cv-00490-JDL, 2017 U.S. Dist. LEXIS 68177, at *18 (D. Me. May 4, 2017). If Ms. Scarcelli has interfered with the contractual and advantageous relationship that Ms. Gleichman had with Stanford or Acadia, her remedy is in contract. In any event, Ms. Gleichman has not adduced prima facie evidence of the elements of this claim. *See Rutland*, 2002 ME 98, ¶ 13, 798 A.2d 1104. Defendants are entitled to summary judgment on Count XIV of the Complaint.

Plaintiffs also do not produce prima facie evidence sufficient to state a claim for judicial dissolution of Stanford pursuant to 31 M.R.S. § 1595(1). Plaintiffs' argument that the fact that Ms. Scarcelli "committed innumerable breaches of the operating agreement as well as her fiduciary duties [is] more than sufficient to justify an order of dissolution" is not legally accurate. 31 M.R.S. §§ 1595(1)(A)-(E) specifically delineate the circumstances under which a Court may order dissolution, and the list does not include "innumerable breaches of the operating agreement and fiduciary duties." Plaintiffs do not even attempt to fit the facts they adduce into any of the delineated statutory categories. Defendants are entitled to summary judgment on Count VI.

Finally, Plaintiffs' request for an accounting of Stanford and Acadia stated in Count XX fails for the same reason as Count XXI, which seeks an accounting as to Preservation Holdings. The necessary relationship for accounting as an equitable remedy is not present between Ms. Scarcelli and Plaintiffs; in any event, Plaintiffs are entitled to inspection and audit rights under the operating agreements for the entities. To the extent that Plaintiffs have raised a factual issue with

25

respect to Ms. Scarcelli's non-compliance with those provisions then Plaintiffs must pursue those claims in the context of an action for breach of contract. (Def's Supp'g S.M.F. ¶ 37; Pl's Opp'g S.M.F. ¶ 37.)

## CONCLUSION

Based on the forgoing it is hereby ordered:

That Defendants' Second Motion for Summary Judgment in Granted in Part and Denied in Part. Summary judgment is entered in Defendants' favor on the following counts: Count I, Count II, Count III, Count V, Count VI, Count VIII, Count XII, Count XIII, Count XIV, Count XX, Count XXI, Count XXII, and Count XXIII.

Defendants' motion is denied with respect to Count IV and Count XV. All other counts have been dismissed or otherwise ruled on in prior orders. These two counts, for breach of fiduciary duty and breach of contract, are all that remain in the case.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: 3/7/19

M. Michaela Murphy
**Justice, Business and Consumer Court**

Entered on the Docket: 3-8-19
Copies sent via Mail __ Electronically ✓

26

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-17-11

PAMELA W. GLEICHMAN, et al.,          )
                                      )
            Plaintiffs,               )       **ORDER ON PLAINTIFF'S MOTION**
                                      )       **FOR PARTIAL RECONSIDERATION**
     v.                               )       **OF SUMMARY JUDGMENT ORDER**
                                      )
ROSA SCARCELLI, et al.,               )
                                      )
            Defendants.               )

Plaintiffs Pamela W. Gleichman ("Gleichman") and Karl S. Norberg ("Norberg") have

moved for partial reconsideration of this Court's summary judgment decision entered November

2, 2017. Defendants Rosa Scarcelli ("Scarcelli") and Preservation Holdings, LLC (collectively,

the "Scarcelli Defendants") and Defendants Stanford Management, LLC ("Stanford") and Acadia

Maintenance, LLC ("Acadia") (collectively, the "Entity Defendants") oppose the motion. The

Court heard oral argument on the motion on February 15, 2018. John Campbell, Esq. appeared for

Plaintiffs, G. Toby Dilworth, Esq. appeared for the Scarcelli Defendants, and James Wagner, Esq.

appeared for the Entity Defendants.

## PROCEDURAL HISTORY

On November 2, 2017, this Court entered a combined order (the "Combined Order")

granting in part and denying in part the Scarcelli Defendants' and the Entity Defendants'

(collectively, "Defendants"[1]) motions for partial summary judgment. The Combined Order

awarded summary judgment for the Defendants on Count X (Declaratory Judgment as to GN

Holdings) and Count VII (Rescission, Nullification and Avoidance of Transfer to Scarcelli of

---

[1] Norman, Hanson & DeTroy, LLC, is also a named defendant in this matter. The instant motion does not concern it.

1

Membership Interests in Stanford Management, LLC). Plaintiffs do not move the Court to reconsider those awards in the instant motion. The Court's disposition as to the remaining counts on which Defendants moved for summary judgment was more complex. Relevant here, the Court granted summary judgment in favor of all Defendants as to the claims brought by Norberg as trustee of the Scarcelli-Norberg Holdings ("SNH") Trust in Count IV (Breach of Fiduciary Duty- Derivative Action), Count V (Oppression and Breach of Fiduciary Duties- Owed to Pam, Karl, and SNH Trust), and Count VI (Injunction and/or Dissolution of Stanford, etc.).[2]

## STANDARD OF REVIEW

"A motion for reconsideration of the judgment shall be treated as a motion to alter or amend the judgment." M.R. Civ. P. 59(e). Courts should order relief pursuant to M.R. Civ. P. 59(e) when it is "reasonably clear that prejudicial error has been committed or that substantial justice has not been done." *Cates v. Farrington*, 423 A.2d 539, 541 (Me. 1980). "Under Rule 59(e), the trial court is free . . . to alter or amend its judgment when convinced it was erroneous, and substitute the proper judgment in its place." *Most v. Most*, 477 A.2d 250, 258 (Me. 1984). A trial court's ruling on a motion for reconsideration is reviewable for an abuse of discretion. *Shaw v. Shaw*, 2003 ME 153, ¶ 12, 839 A.2d 714.

## DISCUSSION

The issue the Court must decide on this motion for reconsideration is superficially simple: what causes of action were before the Court on Defendants' motions for partial summary judgment?

The Combined Order granted summary judgment in favor of Defendants by applying the

---

[2] The Court also awarded summary judgment to the Defendants as to the claims brought by Gleichman in these counts as they relate to Stanford based on its conclusion that Gleichman lacks standing to bring these claims. Plaintiffs do not ask the Court to reconsider that ruling in the instant motion.

2

doctrine of claim preclusion, one of the two branches of *res judicata*. (Combined Order at 11-16.) *See Pearson v. Wendell*, 2015 ME 136, ¶ 23, 125 A.3d 1149. Claim preclusion prevents relitigation of claims if: "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 8, 940 A.2d 1097. "[A] voluntary dismissal with prejudice constitutes a valid final judgment for purposes of claim preclusion." *Darney v. Dragon. Products Co.*, 592 F. Supp. 2d 180, 184 n.3 (D. Me. 2009) (citing *United States v. Cunan*, 156 F.3d 110, 114 (1st Cir. 1998)).

These same parties were involved in a prior action. Scarcelli sued Gleichman and Norberg in 2011, and on June 17, 2013, these Plaintiffs filed an amended counterclaim and third-party complaint (the "Counterclaim") in that lawsuit against Scarcelli, naming Stanford as a third-party defendant. The Counterclaim was in many respects virtually identical to the Plaintiffs' Second Verified Amended Complaint (the "Complaint") filed in this case, alleging *inter alia* breaches of fiduciary duty on the part of Scarcelli and seeking judicial dissolution of Stanford. The Counterclaim was disposed of in a mutually executed stipulation of dismissal filed on October 30, 2013 (the "Stipulation of Dismissal"). Gleichman's claims were dismissed without prejudice. Norberg's claims—both individually and as trustee of the SNH Trust—were dismissed with prejudice.

The Stipulation of Dismissal was the prior judgment on which Defendants based their claim preclusion argument in their motions for partial summary judgment. The Scarcelli Defendants' motion for partial summary judgment requested that the Court grant summary judgment in their favor on Counts IV, V, and VI of the Complaint on that ground. (Scarcelli's Mot. Summ. J. at 19.)

3

Pursuant to M.R. Civ. P. 7(b)(3)(2), the Scarcelli Defendants included with their motion a draft order which specifically stated the relief to be granted by the motion: "Judgment is entered in favor of Rosa Scarcelli and Preservation Holdings, LLC on Counts IV, V, VI, VII, and X of Plaintiff's Second Verified Amended Complaint." However, the Scarcelli Defendants narrowed the scope of their requested relief in the body of their memorandum of law in support of their motion, writing that "Plaintiffs are barred from relitigating any claims arising from Ms. Scarcelli's alleged breach of fiduciary duties owed to Stanford, Acadia, and Plaintiffs *up until the date of the Stipulation of Dismissal . . . .*[3]" (Scarcelli's Mot. Summ. J. at 16 (emphasis added).)

In their oppositions to Defendants' motions for summary judgment, Plaintiffs' main argument was that the Stipulation of Dismissal was not a "valid judgment" and therefore claim preclusion did not bar their claims. (Pl's Opp. Scarcelli Mot. Summ. J. at 8-12, 14-17; Pl's Opp. Stanford Mot. Summ. J. 2-16.) This argument was unavailing because it did not apply any of the recognized exceptions to the general rule that a final judgment is a valid judgment. *N.E. Bank N.A. v. Crochere*, 438 A.2d 266, 268, 268 n. 7 (Me. 1981). However, Plaintiffs also raised the argument that *res judicata* could not preclude claims as to continuing wrongs, because claims based on conduct that post-dated the entry of the Stipulation of Dismissal could not have been litigated in the first action.[4] *Portland Water Dist*, 2008 ME 23, ¶ 8, 940 A.2d 1097. (Pl's Opp. Scarcelli Mot.

---

[3] Plaintiffs suggest that the Court should instead use June 17, 2013—the date of the filing of the Counterclaim—as the date for determining the scope of claim preclusion, because Plaintiffs were not required to add claims that arose after the Counterclaim was filed. The Court rules that October 30, 2013—the date of the entry of the Stipulation of Dismissal—is a more appropriate bar date. That was the date on which the parties voluntarily negotiated a release of the relevant claims. *But cf. Darney*, 592 F. Supp. 2d at 188.

[4] The Court notes that it accepts this proposition because it went unchallenged by Defendants in their reply memoranda to Plaintiffs' opposition to their motions for partial summary judgment and again in their oppositions to the instant motion. *But see Barth v. Town of Sanford*, 2001 U.S. Dist. LEXIS 17934, No. 01-CV-208-P-C *11-14 (D. Me. Nov. 26, 2001) (claim preclusion barred subsequent nuisance claim despite new allegations that post-dated prior judgment). *Cf. Darney*, 592 F. Supp. 2d at 185-88 (claim preclusion did not bar subsequent nuisance claim where plaintiffs made a "broad[] effort to restrict their [ ] complaint to claims that arose since [the voluntary dismissal with prejudice of their prior suit]").

4

Summ. J. 13-14.) This aspect of Plaintiffs' argument went unchallenged in the Scarcelli Defendants' reply brief, which concerned itself exclusively with parrying Plaintiffs' collateral attack on the prior judgment.[5]

The issue before the Court thus comes into sharper focus. Even if the Defendants were moving for summary judgment on Counts IV-VI *in toto* when they filed their motion, based on the concession in their memoranda[6] and their silence on the issue in their reply brief, did the Plaintiffs waive the argument that summary judgment could not be awarded on *res judicata* grounds to the extent that those counts state claims based on Scarcelli's conduct after the entry of the Stipulation of Dismissal. Based on the transcript of the oral argument on the motions for summary judgment, it is apparent that they were not asking the Court to rule on any causes of action that may have accrued after the filing of the Stipulation of Dismissal:

> THE COURT: Isn't there some post-November 2013 conduct that is at issue in this case though? (Mot. Tr. 12 (Sep. 14, 2017).)
>
> * * *
>
> MR. DILWORTH: Now, after November 12th, 2013, they may have a claim that there was another thing that Rosa Scarcelli did that gave rise to a new cause of action.
>
> THE COURT: Right.
>
> MR. DILWORTH: That may be the case, but if you grant this motion, everything up to that day is out of the case.
>
> THE COURT: And your position would be that the she would—that the plaintiffs would have to file a new action to—a new cause of action to argue that Ms. Scarcelli did something actionable after November 2013?

---

[5] The prior judgment in the 2011 case consisted of both the Stipulation of Dismissal and the court's order on Scarcelli's motion for partial summary judgment. The court's partial summary judgment order implicated only Count X of the Complaint, which Plaintiffs are not asking the Court to reconsider in the instant motion.

[6] The Entity Defendants' motion for partial summary judgment incorporated the Scarcelli Defendants' memorandum of law in support of their own motion.

MR. DILWORTH: *I don't think they have to restart the case*, but they have to identify to us what it is after—

THE COURT: What the cause is.

MR. DILWORTH: —November 12th, because I think John will tell you that he has alleged things. I think—the reason why we brought this case is—*brought this motion at this time is for discovery purposes. It's going to limit discovery tremendously. We think we're going to save a lot of time and effort, and further litigation about issues that happened before November of 2013.*

THE COURT: Okay. Understood.

MR. DILWORTH: *But we don't think that it will necessarily kick out everything.* Now, there may be issues of claim—excuse me—of issue preclusion that will extend beyond, but that's—

THE COURT: That's not before me now.

MR. DILWORTH: *That's not before you now, because that needs to be developed a little bit more on the—*

THE COURT: Understood.

MR. DILWORTH: —discovery.

THE COURT: Okay. (Mot. Tr. 13-14 (Sep. 14, 2017) (emphasis added).)

* * *

MR. DILLWORTH: Mr. Campbell says that *none of the arguments—or none of the issues after 2013 are barred. That may be true for some issues*, but if issue preclusion applies, then obviously he's already litigated those issues. Those issues have been resolved. *We're not asking you to make an order on that at this point.*

THE COURT: Okay. (Mot. Tr. 28 (Sep. 14, 2017) (emphasis added).)

As to Norberg's claims, the Combined Order granted summary judgment to the Defendants in full on Counts IV-VI.[7] This Court ruled that Plaintiffs had failed to establish a prima facie case that anything Scarcelli did after the entry of the Stipulation of Dismissal in the prior action could

---

[7] See n.2 at p.2 of this Order, *supra.*

6

state a claim under those Counts. Here, on reconsideration, this Court determines that this ruling was prejudicial error.

"[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion." *Corey v. Norman, Hanson, & DeTroy,* 1999 ME 196, ¶ 9, 742 A.2d 933 (alteration in original) (quoting Celotex *Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "A defendant moving for a summary judgment has the burden to assert those elements of the cause of action for which the defendant contends there is no genuine issue to be tried." *Id.* The rationale for this rule sounds in basic fairness: a party resisting summary judgment is entitled to notice of the grounds on which the movant is relying, so that it knows for which issues it is obligated raise a genuine issue of material fact. *See id.*

Here, the only ground on which the Defendants moved for summary judgment on Counts IV-VI was claim preclusion. Plaintiffs replied that claim preclusion could not encompass those Counts to the extent that they rely on conduct after the entry of the Stipulation of Dismissal. As noted above, Defendants generally accepted this proposition, and at the very least raised no argument to rebut it in reply or at oral argument. Logically, the Court must on reconsideration here rule that Defendants did not move for summary judgment on the causes of action stated in Counts IV-VI that may have accrued after the entry of the Stipulation of Dismissal. The Court must further rule that as a result, Plaintiffs were not required to establish a prima facie case as to those causes of action in defense of the summary judgment motion. *See id.* It was thus prejudicial error to award summary judgment to Defendants on the grounds that Plaintiffs did not do so.

Defendants argue that their damaging statements about causes of action based on conduct occurring after the entry of the Stipulation of Dismissal related to other counts of the Complaint. It is true that Defendants did not move for summary judgment as to all counts, and that some counts

7

are based exclusively on allegations of post-Stipulation of Dismissal activity. However, as noted above, it was the Defendants' burden "to assert those elements of the cause of action for which the defendant contends there is no genuine issue to be tried." *Id.* The issue is not whether Defendants "admit[ted] or concede[d] that Plaintiffs created a dispute of fact as to 'continuing wrongs' that would preclude summary judgment as to Counts IV, V, and VI." (Scarcelli's Mot. Summ. J. at 4.) Rather, it is whether Defendants met their burden to assert that there was no genuine material factual issue that the post-Stipulation of Dismissal conduct could not form a basis for those Counts. The Court rules that they did not.

At oral argument, Defendants suggested that Plaintiffs' motion for reconsideration should be denied based on Plaintiffs' failure to move for a continuance or seek other relief under M.R. Civ. P. 56(f). "M.R. Civ. P. 56(f) . . . states that a party opposing summary judgment must be allowed adequate opportunity to conduct discovery or otherwise develop evidence in opposition to the summary judgment motion." *Angel v. Hallee*, 2012 ME 10, ¶ 13, 36 A.3d 922 (citing *S. Portland Police Patrol Ass'n v. City of S. Portland*, 2006 ME 55, ¶¶ 11-12, 896 A.2d 960). Because M.R. Civ. P. 56(b) allows a party to move for summary judgment before discovery is complete, Rule 56(f) "protects a party opposing a summary judgment motion who for valid reasons cannot by affidavit . . . present facts essential to justify the adverse party's opposition to the motion." *S. Portland Police Patrol Ass'n*, 2006 ME 55, ¶ 11, 896 A.2d 960. Under some circumstances, our Law Court has affirmed summary judgment where the party resisting summary judgment failed to avail herself of the protection of Rule 56(f). *See Bangor Sav. Bank v. Richard*, 2014 ME 20, ¶ 3, 86 A.3d 1167.

Rule 56(f) has no bearing on the argument presented by Plaintiffs and adopted by the Court in this order. Motions under Rule 56(f) presuppose fair notice of the issues for which the party

8

resisting a summary judgment motion must raise a genuine material issue of fact. The Court is now ruling that Plaintiffs were not obligated to raise a genuine material fact as to causes of action which accrued after the entry of the Stipulation of Dismissal because the Defendants were not moving for summary judgment as to those causes of action. Plaintiffs could not have been expected to request more time for discovery on issues that were not before the Court on the summary judgment motion.

The Court is satisfied that it is "reasonably clear that prejudicial error has been committed or that substantial justice has not been done." *Cates,* 423 A.2d at 541. Plaintiffs' motion for partial reconsideration is therefore GRANTED.

## CONCLUSION

Based on the foregoing it is hereby ORDERED:

That Plaintiffs' motion for partial reconsideration of summary judgment order is GRANTED.

The Combined Order is hereby modified to strike the language from the first full paragraph of page 15 through the end of the second full paragraph on page 16, found in Part III.A. of that order.

Paragraphs 3(a) and 4 of the conclusion of the Combined Order (p. 21) must also be modified as follows:

(3) The Scarcelli Defendants' motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART as to Count IV, Count V, and Count VI.

a. As to Plaintiff Karl Norberg's claims in Counts IV, V, and VI, the Scarcelli Defendants' motion is GRANTED IN PART AND DENIED IN PART. To the extent that those counts state causes of action based on activity that predates the entry of the Stipulation of Dismissal, the motion is GRANTED. To the extent that those counts state causes of action based on activity that postdates the entry of the Stipulation of Dismissal, the motion is DENIED.

9

(4) The Entity Defendants' motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART as to Defendant Stanford on Counts IV, V, and VI. To the extent that those counts state causes of action based on activity that predates the entry of the Stipulation of Dismissal, the motion is GRANTED. To the extent that those counts state causes of action based on activity that postdates the entry of the Stipulation of Dismissal, the motion is DENIED.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 7/2/1r

Michaela Murphy, Justice
Business and Consumer Court

Entered on the Docket: 3/2/18
Copies sent via Mail___ Electronically ✓

10

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-17-11 ✓

PAMELA W. GLEICHMAN, et al., )
)
     Plaintiffs, )
)
v. )
)
ROSA SCARCELLI, et al., )
)
     Defendants. )
)
)

**COMBINED ORDER ON
DEFENDANTS ROSA SCARCELLI
AND PRESERVATION HOLDINGS,
LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND
STANFORD MANAGEMENT, LLC
AND ACADIA MAINTENANCE,
LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Defendants Rosa Scarcelli and Preservation Holdings, LLC (hereafter "Preservation") (collectively, the "Scarcelli Defendants") have moved for partial summary judgment pursuant to M.R. Civ. P. 56(a) on Plaintiff's Second Verified Amended Complaint (the "Complaint"). Defendants Stanford Management, LLC (hereafter "Stanford") and Acadia Maintenance, LLC (hereafter "Acadia") (collectively, the "Entity Defendants") have also moved for partial summary judgment. Plaintiffs timely opposed and the Scarcelli Defendants and the Entity Defendants replied. Oral argument was heard on both motions on September 14, 2017.[1] Attorney John Campbell appeared for Plaintiffs, Attorney G. Toby Dilworth appeared for the Scarcelli Defendants, and Attorney James R. Wagner appeared for the Entity Defendants.

## PROCEDURAL HISTORY

Plaintiffs' operative pleading is the 83-page Complaint filed with the Cumberland County Superior Court July 26, 2016. The Superior Court (Cumberland County, *Horton, J.*) entered an

---

[1] The Court notes that while Attorneys John Campbell and James Wagner appeared and were heard, the Entity Defendants' motion was filed September 8, 2017 and was not yet fully briefed when oral argument was held. To the extent that no second oral argument was held after an opposition was filed to the Entity Defendants' motion, the Court exercises it discretion under M.R. Civ. P. 7(b)(7) and decides that motion without reargument.

1

order on the Scarcelli Defendants' and Entity Defendants' joint motion for partial summary judgment on the pleadings on January 12, 2017, granting judgment in favor of all those defendants as to Count XI (abuse of process) of the Complaint and dismissing Count XVI (punitive damages) as redundant. *Gleichman v. Scarcelli*, CUMSC-CV-2015-539 at 6 (Me. Super. Ct., Cum. Cty., Jan. 12, 2017).

The Scarcelli Defendants now move this Court for summary judgment in their favor as to Count IV (Breach of Fiduciary Duties- Derivative Action), Count V (Oppression and Breach of Fiduciary Duties- Direct Action), Count VI (Judicial Dissolution of Stanford), Count VII (Avoidance of Transfer of Stanford Membership Interests to Ms. Scarcelli), and Count X (Declaratory Judgment- GN Holdings) of the Complaint. (*See* Complaint ¶¶ 195-212, 216-223).

The Entity Defendants move for summary judgment as to them on Count IV, Count V, Count VI, and Count VII. The Entity Defendants adopted the Scarcelli Defendants' arguments in their own motion as well as the Scarcelli Defendants' statement of material facts. Plaintiffs filed an opposition to the Entity Defendants' motion that offered grounds specifically directed at defeating the Entity Defendants' motion for summary judgment. Plaintiffs also filed separate M.R. Civ. P. 56(h)(2),(3) opposing and reply statements of facts for each motion. The Court's disposition on the Scarcelli Defendant's motion controls much of the result on the Entity Defendants' motion. Where grounds unique to the Entity Defendants have been raised the Court addresses those arguments separately.

## FACTUAL BACKGROUND

### I.    PARTIES

This motion comes before the Court in the context of almost a decade of litigation between Plaintiffs and Defendant Rosa Scarcelli, who are all family members. (Plaintiff's Statement of

2

Additional Facts ("P.S.A.F.") at ¶ 1).[2] Mr. Norberg is the sole trustee of the Scarcelli Norberg Holdings Trust (hereafter "SNH Trust") (Defendants' Statement of Material Facts ("S.M.F.") at ¶ 7). Ms. Gleichman is the sole lifetime beneficiary of the SNH Trust. (S.M.F. ¶ 8).

Stanford manages subsidized housing properties in the State of Maine. (S.M.F. ¶ 1). Acadia is a real estate maintenance company. (S.M.F. ¶ 10). Ms. Scarcelli has been the President of Acadia and Stanford since 2006. (S.M.F. ¶¶ 9-10). Ms. Scarcelli own 51% of Stanford and is the majority member; the remaining 49% is owned by the SNH Trust. (S.M.F. ¶¶ 3-4). Acadia's ownership is disputed. (S.M.F. ¶¶ 11-13; Plaintiff's Statement of Facts in Dispute ("P.S.F.D.") at ¶¶ 11-13).[3] However, there is no dispute that Ms. Scarcelli is the majority owner of Acadia. (*Id.*).

Preservation is not described in any Statement of Facts filed in support or opposition of either motion, nor is it addressed in any Defendants' or Plaintiffs' briefs on this motion. Preservation was founded by Ms. Scarcelli and she is the company's sole member. (Complaint ¶ 13). Plaintiffs' claims against Preservation under review in the present motion are unclear, other than to the extent that Plaintiffs allege that Ms. Scarcelli has used that entity as a device to facilitate the behavior complained of in the counts against her. (Complaint ¶¶ 13, 202).

Although not a party to this lawsuit, a brief description of GN Holdings, LP, (hereafter "GN") is appropriate here given its importance to the Scarcelli Defendants' motion. GN is a limited partnership which is a majority limited partner in several limited partnerships that own various multifamily properties. (S.M.F. ¶ 14). Although Plaintiffs dispute the ownership of GN in this lawsuit, it is not disputed that on November 13, 2013 the Business and Consumer Court (*Nivison, J.*) entered an Order, in prior litigation between Ms. Gleichman and Mr. Norberg on the one side

---

[2] As noted above, Plaintiffs filed separate M.R. Civ. P. 56(h)(2),(3) opposing and reply statements of facts for each motion. Except where otherwise indicated, references to Plaintiffs' "statement of facts in dispute" and "statement of additional facts" refer to those filed in opposition to the Scarcelli Defendants' motion for summary judgment.

[3] *See* Note 2 *supra*.

3

and Ms. Scarcelli on the other, declaring that Ms. Scarcelli is the owner of a 70% equity interest in GN. (S.M.F. ¶ 30). Mr. Norberg was previously the general partner of GN, until as late as November 2013. (S.M.F. ¶ 17, P.S.A.F. ¶ 39). Mr. Norberg is no longer a partner in GN. (S.M.F. ¶ 41; P.S.A.F. ¶ 39).

## II. SEQUENCE OF EVENTS GIVING RISE TO THIS LAWSUIT

Despite Plaintiffs' twenty-three-page response to the Scarcelli Defendants' seven-page statement of material facts, the parties agree on the general sequence of events giving rise to this lawsuit. Ms. Scarcelli has served as president of Stanford and Acadia since 2006. (S.M.F. ¶¶ 9-10). Effective January 1, 2007, Ms. Gleichman gifted 41% of her membership units in Stanford to Ms. Scarcelli. (S.M.F. ¶ 2). Ms. Scarcelli already held 10% of the membership units of Stanford, (S.M.F. ¶ 37), so Ms. Gleichman's gift made her the majority member of Stanford with 51% of its membership units. (S.M.F. ¶ 3; P.S.A.F. ¶ 50).

In 2011, after regulators cited deficiencies at some of the properties under the control of GN, Ms. Scarcelli made a written demand upon Mr. Norberg in his capacity as general partner of GN to remove Ms. Gleichman or entities controlled by her as general partners of various projects, based on their alleged failure to fulfill their obligations to GN. (S.M.F. ¶ 17). Mr. Norberg did not respond to the demand, so Ms. Scarcelli then filed a complaint in Cumberland County Superior Court in January 2012. (S.M.F. ¶¶ 18-19). The complaint requested a declaratory judgment and other relief and named GN, Ms. Gleichman, and Mr. Norberg as defendants. (S.M.F. ¶ 19). After a brief sojourn in the United States District Court for the District of Maine, the case was remanded to Superior Court and eventually found its way here to the Business and Consumer Court. (S.M.F. ¶¶ 20-22). It was here that Ms. Gleichman and Mr. Norberg filed their Amended Counterclaim and Third-Party Complaint (hereafter the "Counterclaim"). (S.M.F. ¶¶ 20-23). Ms. Gleichman and Mr.

4

Norberg named Stanford as a third-party defendant in the Counterclaim. (S.M.F. ¶ 33; *see* Counterclaim).

These two pleadings—Ms. Scarcelli's complaint and the Counterclaim—dealt with several of the same issues now before this Court. Ms. Scarcelli's complaint sought *inter alia* a judicial declaration of her ownership interest in GN. (S.M.F. ¶ 26). The Counterclaim alleged *inter alia* breaches of duty on the part of Ms. Scarcelli in her management of Stanford and sought judicial dissolution of Stanford. (S.M.F. ¶¶ 33-35). The Counterclaim was disposed of in an agreed-to Stipulation of Dismissal filed by both parties on October 30, 2013. (S.M.F. ¶¶ 39-42). Ms. Gleichman's claims were dismissed without prejudice. (S.M.F. ¶ 42). Mr. Norberg's claims—both individually and as trustee of the SNH Trust—were dismissed with prejudice. (S.M.F. ¶¶ 39-40).

Ms. Scarcelli's complaint was also largely disposed of by the Stipulation of Dismissal. (S.M.F. ¶ 39). Prior to the filing of the Stipulation of Dismissal, on October 18, 2013, Ms. Scarcelli filed a motion for partial summary judgment on the count of her complaint that requested a judicial declaration of her ownership interest in GN. (S.M.F. ¶ 26). The parties exempted that issue from the Stipulation of Dismissal and left it to the court to decide on the pending motion for partial summary judgment. (S.M.F. ¶ 39). The court ruled on the unopposed motion on November 13, 2013, granting judgment in favor of Ms. Scarcelli and declaring her the owner of a 70% equity interest in GN. (S.M.F. ¶¶ 29-30).

Although the 2012 litigation concluded with the entry of the court's order on November 13, 2013, the Plaintiffs have alleged in this lawsuit that Ms. Scarcelli has continued to breach her fiduciary duties to them and continued to divert profits due to them. (P.S.A.F. ¶ 27).

## STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any

5

material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). A material fact is one capable of affecting the outcome of the litigation. *Savell v. Duddy*, 2016 ME 139, ¶ 19, 147 A.3d 1179. A genuine issue exists where the jury would be required to "choose between competing versions of the truth." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040. "Summary judgment is no longer an extreme remedy." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *See Savell*, 2016 ME 139, ¶ 18, 147 A.3d 1179. *See also Spickler v. Dube*, 644 A.2d 465, 467-68 (Me. 1994) (holding that *res judicata* entitled the moving party to summary judgment).

## DISCUSSION

I.  ## MS. SCARCELLI IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT X OF THE COMPLAINT UNDER THE DOCTRINE OF ISSUE PRECLUSION

In Count X of the Complaint, Plaintiffs seek a declaratory judgment declaring that Ms. Scarcelli is not the 70% owner of GN and that Mr. Norberg retains a 95% interest in that entity. (Complaint ¶ 223). The Scarcelli Defendants argue that *res judicata* precludes Plaintiffs from relitigating this issue in light of the court's November 13, 2013 order on Ms. Scarcelli's motion for summary judgment, naming her the owner of a 70% equity interest in GN.

*Res judicata* consists of two branches: issue preclusion (formerly referred to as "collateral estoppel") and claim preclusion (formerly referred to as "bar or merger"). *Pearson v. Wendell*, 2015 ME 136, ¶ 23, 125 A.3d 1149. "[C]laim preclusion is focused on the claims set forth in the prior proceeding, collateral estoppel concerns factual issues, and applies even when the two proceedings offer different types of remedies." *Id.* ¶ 9. Issue preclusion "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment,

6

and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 9, 940 A.2d 1097. Issue preclusion "arises only if the identical issue necessarily was determined by a prior final judgment." *Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 25, 834 A.2d 140 (quotations omitted). This prong of *res judicata* is "focused on factual issues, not claims, and asks whether a party had a fair opportunity and incentive in an earlier proceeding to present the same issue or issues it wishes to litigate in a subsequent proceeding." *Id.* ¶ 22. The relevant factors a court should consider in determining whether a party had a fair opportunity and incentive to litigate in an earlier proceeding include

> the size of the claim, the forum of the prior litigation, whether the issue was a factual or a legal one, the foreseeability of future suits, the extent of the previous litigation, the availability of new evidence, the experience of counsel, . . . [and] procedural opportunities available in the second suit that were unavailable in the first.

*Gray v. TD Bank, N.A.*, 2012 ME 83, ¶ 21, 45 A.3d 735.

In the 2012 litigation, Plaintiffs had a fair opportunity and incentive to litigate the same issue they bring in Count X. *See id.* ¶ 22. Plaintiffs had an economic incentive due to the financial and tax benefits at stake. (S.M.F. ¶ 27.) Plaintiffs were represented by experienced counsel and had all of the tools of discovery at their disposal. (S.M.F. ¶ 25.) The Stipulation of Dismissal explicitly carved out the issue of GN's ownership from the other claims to be dismissed, putting Plaintiffs on notice that the court would be ruling on the issue. (S.M.F. ¶ 39.) Although Plaintiffs did not oppose Ms. Scarcelli's summary judgment motion in the 2012 litigation, there is no genuine dispute that they had a fair opportunity and incentive to do so.

Count X is barred by issue preclusion because the identical issue was determined by the Court's judgment in its November 13, 2013 order on Ms. Scarcelli's motion for summary judgment in the prior litigation between these parties, and Plaintiffs had a fair opportunity and incentive to

7

litigate. The issue in that latter litigation and this case is identical, and the court entered final judgment deciding that issue in the prior case.

Plaintiffs' arguments for why *res judicata* should not apply are unavailing. First, Plaintiffs allege that the Order declaring Ms. Scarcelli owner of a 70% "equity interest" in fact only declared that Ms. Scarcelli owns 70% of the "limited partner interests" of the limited partnership. As such, Plaintiffs argue that they are entitled to seek declaratory relief as to the ownership of the "general partner interests" in GN Holdings and how the partnership's ownership is distributed between general partners and limited partners.

Plaintiffs claim that a review of the pleadings from the prior litigation shows that only the limited partnership interest was in issue. However, regardless of what was litigated, the Court's order in the 2012 Litigation clearly and unambiguously declares Ms. Scarcelli "the owner of a 70% equity[4] interest" in the limited partnership. The Court is not inclined to accept Plaintiff's invitation to look beyond this plain, unambiguous language in a prior final judgment of this Court.

Plaintiffs next point out that this was a judgment on a motion for summary judgment for declaratory relief and as such *res judicata* should not apply. Indeed, claim preclusion generally does not apply where only declaratory relief is sought. *See Sebra v. Wentworth*, 2010 ME 21, ¶ 10, 990 A.2d 538 (holding claim preclusion applied in that case despite the prior judgment being a declaratory judgment because the claim seeking declaratory relief was joined with a claim for an injunction). *See also* Restatement (Second) of Judgments, § 33, cmt. c ("When a plaintiff seeks solely declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant . . . . The effect of such a declaration [therefore] is not to [apply claim

---

[4] Equity is "that portion of a company's net worth belonging to its owners or shareholders." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 492 (5th ed. 2016). Thus, Ms. Scarcelli was declared the owner of 70% of all of the net worth belonging to GN's owners.

preclusion.]").

But the Scarcelli Defendants prevail on this count as a matter of issue preclusion, not claim preclusion. The exact issue Plaintiffs seek a declaratory judgment on in this case was already decided in the prior litigation. Unlike claim preclusion, issue preclusion applies to declaratory judgments with the same vitality as it applies to coercive judgments. *See* Restatement (Second) of Judgments, § 33, cmt. b ("If a declaratory judgment is valid and final, it is conclusive, with respect to the matters declared . . . even as to a party who makes no appearance in the action.").

That the motion was unopposed does not soften the judgment's preclusive effect. *Id.* Plaintiffs' failure to oppose the motion—or seek relief under Rule 60(b), or on appeal—does not make the judgment more vulnerable to collateral attack. *See Caron v. City of Auburn*, 567 A.2d 66, 68 n. 5 (Me. 1989); *Baliey v. City of Lewiston*, 2017 ME 160, ¶ 10, 168 A.2d 762.

The Plaintiffs have failed to raise any genuine, material factual dispute to demonstrate why issue preclusion does not entitle the Scarcelli Defendants to judgment as a matter of law. *See Spickler*, 644 A.2d at 467-68. The Court thus rules that the Scarcelli Defendants are entitled to judgment as a matter of law on Count X of Plaintiffs' complaint and hereby **grants** the Scarcelli Defendants' motion for summary judgment as to Count X of Plaintiffs' complaint.

II.     THE SCARCELLI DEFENDANTS AND THE ENTITY DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO COUNT VII BECAUSE THERE IS NO GENUINE FACTUAL ISSUE THAT THE TRANSFER OF STANFORD MEMBERSHIP UNITS TO MS. SCARCELLI WAS A GIFT

As explained below, claim preclusion bars Mr. Norberg from litigating the issue of the transfer of membership units in Stanford to Ms. Scarcelli. However, unlike Mr. Norberg's claims, Ms. Gleichman's claims in the 2012 litigation were dismissed without prejudice. (S.M.F. ¶ 42). Therefore, she is not barred from bringing Count VII and seeking to avoid the transfer of 41 membership units in Stanford from Ms. Gleichman to Ms. Scarcelli. In their motion, the Scarcelli

Defendants claim that they are nonetheless entitled to judgment as a matter of law on this Count because the transfer was an irrevocable *inter vivos* gift. Plaintiffs respond that there is a genuine factual issue whether the gift was conditional.

An *inter vivos* gift requires three elements: (1) donative intent; (2) delivery with intent to surrender all present and future dominion over the property; and (3) acceptance by the donee. *Brackett v. Larrivee*, 562 A.2d 138, 139 (Me. 1989). An *inter vivos* gift is irrevocable and "[a] change of mind by the donor . . . cannot undo th[e] completed gift." *Id.* at 140. Unlike a gift *causa mortis*, which is complete only upon the death of the donor, an *inter vivos* gift is made irrevocable on delivery. *Bickford v. Mattocks*, 50 A. 894, 895 (Me. 1901).

There is ample record evidence to support a finding that the transfer of Stanford membership units from Ms. Gleichman to Ms. Scarcelli was a valid and completed *inter vivos* gift. (Complaint ¶ 47; S.M.F. ¶¶ 36- 38). Plaintiffs do not argue that the elements for an effective donative transfer have not been met. Instead, Plaintiffs rely exclusively on Ms. Gleichman's assertion by affidavit nearly ten years later that the gift was conditional. (P.S.F.D ¶ 38.)

There is no contemporaneous evidence to suggest that the gift was conditional. Plaintiffs do not clearly articulate what consideration flowed from Ms. Scarcelli to Ms. Gleichman in exchange for the transfer, and any such articulation is inconsistent with the allegations brought in the Complaint. (Complaint ¶ 47). Therefore, the Court finds that Ms. Gleichman's mere assertion, many years after the fact, that the gift was meant to be conditional is inadequate to generate a genuine factual issue. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (plaintiff cannot create a factual dispute for purposes of defeating summary judgment merely by raising "improbable references[] and unsupported speculation"). On Ms. Gleichman's affidavit alone, no juror could reasonably find that at the time of the transfer Ms. Gleichman intended the gift to be conditional.

10

The Court does not doubt that Ms. Gleichman regrets her decision to give Ms. Scarcelli her 41 membership units in Stanford, but to allow a disappointed donor to claim, many years after the fact, that a gift was conditional would swallow the rule that completed *inter vivos* gifts are irrevocable. *See Brackett*, 562 A.2d at 140. Plaintiffs cite *Bryant v. Cribbie*, No. 09-P-1421, 2010 Mass. App. Unpub. LEXIS 320 (App. Ct. Mar. 25, 2010) for the proposition that conditions on gifts can be implied from circumstances and that where such an inference is reasonable, summary judgment is not appropriate. To the extent that *Bryant* would dictate a different outcome here, this Court declines to follow that case based on Maine case law and the policy reason explained above.

Based on the foregoing the Court thus hereby **grants** the Scarcelli Defendants motion for summary judgment as to Count VII. There is no genuine question of fact that the transfer of 41 membership units in Stanford from Ms. Gleichman to Ms. Scarcelli was a valid and completed *inter vivos* gift, and the Scarcelli Defendants and Entity Defendants are thus entitled to judgment as a matter of law on that issue.

III.   *RES JUDICATA* BARS MR. NORBERG FROM RELITIGATING THE CLAIMS IN COUNT IV, COUNT V, COUNT VI, AND COUNT VII OF THE COMPLAINT

### A. Mr. Norberg's Claims Are Barred Generally by *Res Judicata*

Count IV is a derivative claim alleging breaches of fiduciary duties on the part of Ms. Scarcelli, Count V is a direct claim grounded in a materially similar allegation, Count VI seeks judicial dissolution of Stanford pursuant to 31 M.R.S.A. § 1595(1), and Count VII seeks an avoidance of the transfer of Stanford membership units to Ms. Scarcelli. (*See* Complaint ¶¶ 195-212). The Scarcelli Defendants argue that *res judicata* entitles them to judgment as a matter of law under a claim preclusion theory because Plaintiffs brought these same claims against Ms. Scarcelli in the Counterclaim filed in the 2012 litigation. Plaintiffs respond that claim preclusion does not

11

(or should not) apply.

Unlike issue preclusion, claim preclusion is focused not on the factual issues determined by a prior final judgment, but "on the claims set forth in the prior proceeding." *Pearson*, 2015 ME 136, ¶ 9, 125 A.3d 1149. Claim preclusion prevents relitigation if: "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Portland Water Dist.*, 2008 ME 23, ¶ 8, 940 A.2d 1097. In other words, a valid final judgment in a prior action will bar the claim of a party to that prior judgment where "the matters presented for decision were, or might have been, litigated in the prior action." *Beegan v. Smith*, 451 A.2d 642, 644 (Me. 1982). "[A] voluntary dismissal with prejudice constitutes a valid final judgment for purposes of claim preclusion." *Darney v. Dragon Products Co.*, 592 F. Supp 2d 180, 184 n.3 (D. Me 2009) (citing *United States v. Cunan*, 156 F.3d 110, 114 (1st Cir. 1998)).

Under Maine law, a transactional test is used to determine whether the matters presented for decision in the second action were, or might have been, litigated in the first action. To apply this test, the court "examin[es] the aggregate of connected operative facts that can be handled together for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." *Portland Water Dist.*, 2008 ME 23, ¶ 8, 940 A.2d 1097. A "new" claim cannot avoid the transactional test simply because it "relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case." *Id.* (quotations omitted). *See also Draus v. Town of Houlton*, 1999 ME 51, ¶ 8, 726 A.2d 1257 (quoting *Beegan*, 451 A.2d at 645) ("When there is a final judgment against a plaintiff, claims the plaintiff has against the same defendant are extinguished with regard to all

12

or any part of the transaction, or series of connected transactions, out of which the action arose.").

Here, all three components of claim preclusion are satisfied. Generally, the same parties to this action—Ms. Scarcelli, Ms. Gleichman, and Mr. Norberg—were parties to the 2012 litigation. Plaintiffs do not dispute that this element has been satisfied, nor could they reasonably do so. The Stipulation of Dismissal filed jointly by the parties to the 2012 litigation is a final prior judgment for *res judicata* purposes. *Darney*, 592 F. Supp 2d at 184 n.3. Finally, Counts IV, V, VI, and VII of Plaintiffs' Complaint arise out of Ms. Scarcelli's alleged mismanagement of Stanford and Acadia—allegations that are substantially similar to the allegations in the Counterclaim filed by Plaintiffs in the 2012 litigation. The claims for relief are virtually identical, to the point that the language itself is almost verbatim. A side-by-side comparison of the operative pleadings of the two lawsuits illustrates that the claims arise out of the same transaction and seek redress for essentially the same basic wrongs. *See Portland Water Dist.*, 2008 ME 23, ¶ 8, 940 A.2d 1097. Counts IV, V, VI, and VII of Plaintiffs' Complaint are frequently a word-for-word recitation of the allegations raised in the Counterclaim in 2012.[5] It is an unescapable conclusion on this record that the claims arise out of the same transaction and seek redress for essentially the same basic wrongs.

Plaintiffs do not argue that a voluntary dismissal with prejudice lacks preclusive effect generally as a "valid final judgment." *See Darney*, 592 F. Supp 2d at 184 n.3. Nor do they argue that the matters presented for decision in this second action could not have been litigated in the first action. *See Beegan*, 451 A.2d 642, 645-46. Instead, Plaintiffs collaterally attack the Stipulation of Dismissal, questioning the "validity" of the prior judgment. *See Portland Water*

---

[5] The Counterclaim did not include a derivative action on behalf of Stanford, which Plaintiffs bring in Count IV of the Complaint. Nonetheless, that claim *might* have been litigated in the prior action between these same parties and still arises out of the same nucleus of operative fact. *Portland Water Dist.*, 2008 ME 23, ¶ 8, 940 A.2d 1097.

*Dist.*, 2008 ME 23, ¶ 8, 940 A.2d 1097 (claim preclusion requires "valid" prior judgment). As grounds for their collateral attack, Plaintiffs claim (1) it was a typographical error that the stipulation dismisses Mr. Norberg's claims "with" instead of "without" prejudice, (P.S.A.F. ¶¶ 8-16); (2) Attorney Dana Strout, Plaintiffs' lawyer at the time, lacked authority to sign the document on behalf of Plaintiffs, (P.S.A.F. ¶¶ 17, 20, 22); and (3) the dismissal was ineffective because Ms. Gleichman was under an Illinois court order not to allow any claims of hers to be abandoned. (P.S.A.F. ¶¶ 2-3). As to (3), Plaintiffs argue that as settlor/ beneficiary of the SNH Trust, the Trust was effectively her asset and thus the Illinois court order enjoined the Trust from dismissing any claims with prejudice.

Plaintiffs' collateral attack on the validity of the prior judgment is impermissible at this stage. It is well-established under Maine law that a final judgment is a valid judgment, unless one of three specific exceptions apply: denial of due process, lack of jurisdiction, or adjudication of issues beyond the scope of those submitted for decision. *N.E. Bank N.A. v. Crochere*, 438 A.2d 266, 268 n. 7 and accompanying text (Me. 1981) (citing *Warren v. Waterville Urban Renewal Authority*, 290 A.2d 362, 365-66 (Me. 1972)). *See also Bailey v. City of Lewiston*, 2017 ME 160, ¶ 10, 168 A.3d 762 ("It is well established that a valid judgment entered by a court, if not appealed from, generally becomes *res judicata* and is not subject to later collateral attack.") (quoting *Standish Tel. Co. v. Saco River Tel. & Tel. Co.*, 555 A.2d 478, 481 (Me. 1989)); *Town of Lincolnville v. Perry*, 150 Me. 113, 119, 104 A.2d 884, 888 (1954) ("A judgment of a court having jurisdiction, no fraud or collusion appearing, cannot, at the instance of a party to it, be impeached collaterally by proof of errors.").

Plaintiffs do not challenge the jurisdiction of the court to enter the joint Stipulation of

14

Dismissal[6] or claim that the court decided an issue outside of what the parties submitted in their stipulation.[7] They do not explicitly allege a violation of due process in the 2012 litigation. The three challenges Plaintiffs now attempt to bring may have been winning arguments on appeal brought pursuant to M.R. App. P. 2, but the twenty-one-day period for bringing an appeal has long since passed. *Id.* As an appeal from a consented-to voluntary stipulation of dismissal may have been procedurally awkward, the Plaintiffs may have instead considered raising these three arguments with the Business and Consumer Court in the original lawsuit in a motion for relief from judgment brought pursuant to M.R. Civ. P. 60(b) under its more forgiving one-year period. *Id.* But the Court need not now consider whether those arguments would have won. The procedural windows for attacking the validity of the entry of the 2013 Stipulation of Judgment have closed.

This analysis does leave one loose end: allegations of post-2013 misconduct on the part of Ms. Scarcelli. Plaintiffs claim that some of the wrongful actions complained of in this case had not yet occurred by the time of the court's entry of the Stipulation of Dismissal on November 13, 2013. (P.S.A.F. ¶ 27). Plaintiffs suggest that these post-2013 wrongful actions state sufficient grounds for relief for the claims now under review.

Despite allusions to "many continuing wrongs," Plaintiffs in fact only draw the Court's attention to one in their opposition and Statement of Additional Facts: namely, Ms. Scarcelli's auction of an entity called General Holdings (formerly Gleichman & Co.) to Preservation in 2014. (Complaint ¶ 152). Preservation had purchased rights to a note and guaranty obligation owed by Plaintiffs and Gleichman & Co., related to their financing of a failed development project in

---

[6] Plaintiffs challenge the jurisdiction of the court to dismiss the SNH Trust's claims in their opposition to the Entity Defendants' motion. The issue is considered in Part II.B.2. *infra* of this Order.

[7] Plaintiffs possibly level such an allegation against the Court's decision declaring Ms. Scarcelli the holder of a 70% equity interest in GN to the extent that they argue that the only question submitted to the Court on that issue was the extent of Ms. Scarcelli's "limited partner interest" and not her equity interest. *See* Part I of this Order *supra*. That is inapposite to the applicability of claim preclusion to the claims under review in this Part.

15

Chicago in 2007-2008. (Complaint ¶¶ 13, 126). The purchase took place on November 20, 2012: nearly a year before the entry of Stipulation of Dismissal in the previous lawsuit.

Even assuming that the purported auction took place and was improper, as this Court must, Plaintiffs do not articulate why that action was a breach of fiduciary duty on the part of Ms. Scarcelli to either themselves or Stanford, how it satisfies the elements required for judicial dissolution pursuant to 31 M.R.S.A. § 1595(1), or why it is sufficient grounds to avoid the transfer of Stanford membership units to Ms. Scarcelli. Plaintiffs cannot raise a factual issue for purposes of defeating summary judgment if they cannot articulate its materiality. *Savell*, 2016 ME 139, ¶¶ 18, 19, 147 A.3d 1139. *See also Dyer v. D.O.T.*, 2008 ME 106, ¶ 14, 951 A.2d 821 (explaining that plaintiff cannot create a factual dispute for purposes of defeating summary judgment merely by raising "conclusory allegations").

Based on the foregoing, the Court hereby **grants** the Scarcelli Defendants' motion for summary judgment on Count IV, Count V, and Count VI of the Complaint as brought by Mr. Norberg as an individual and in his capacity as Trustee for the SNH Trust.

B. **Mr. Norberg's Claims Against Stanford Are Barred by *Res Judicata***

Plaintiffs raise two issues unique to Stanford to argue that *res judicata* should not bar their claims against that entity. First, Plaintiffs argue that Stanford was not a party to the 2012 litigation and that *res judicata* therefore cannot bar subsequent claims against it. Second, Plaintiffs claim that the court lacked jurisdiction over SNH Trust in the 2012 litigation and therefore *res judicata* does not bar SNH Trust from now pursuing a claim against Stanford.

1. Stanford Was a Party to the 2012 Litigation

Plaintiffs claim that Stanford was merely joined as a party in interest to the Counterclaim

16

in the 2012 litigation. (P.S.A.F. ¶¶ 26-27).[8] Plaintiffs argue Stanford was only named as a party in interest because Plaintiffs sought judicial dissolution of Stanford in the Counterclaim, and that the Counterclaim did not seek an award of damages from Stanford (P.S.A.F. ¶ 27). As such, Plaintiffs argue that it would be unfair to bar them from bringing claims against Stanford now, because they could not be expected to have brought those claims against a mere party in interest joined for the limited purpose of recovering against the real interested defendant: Ms. Scarcelli.

Plaintiffs argument is based on a faulty premise: that Stanford was not a real party to the 2012 Litigation. Despite Plaintiffs' attempt to minimize the extent to which the Counterclaim made allegations against Stanford or sought to recover from Stanford, the Counterclaim is replete with allegations against Stanford and names Stanford as a third-party defendant in the caption. (P.S.A.F. ¶ 25; S.M.F. ¶ 33; *see* Counterclaim). The Plaintiffs' theory, in this case as in 2012, is that Ms. Scarcelli used Stanford to her own advantage and to the disadvantage of its minority owner, the SNH Trust. Stanford was as much a defendant in the Counterclaim as it is now in the Complaint.

2. The Court Had Jurisdiction to Enter Final Judgment as to SNH Trust in the 2012 Litigation

Plaintiffs argue that Mr. Norberg's claims as trustee of the SNH Trust were not properly joined to the GN Holdings litigation and therefore the court never had jurisdiction to dismiss SNH Trust's claims. (P.S.A.F. ¶¶ 23-25). Lack of jurisdiction is one of the limited exceptions to the general rule that a final judgment is a valid one, and is therefore one of the few permissible means of collateral attack of a prior judgment to defeat *res judicata*. *N.E. Bank N.A.*, 438 A.2d at 268.

Plaintiffs note that SNH Trust was not named as a defendant in the 2012 Litigation, and that SNH Trust was not joined in the litigation until Plaintiffs filed the Counterclaim. (P.S.A.F. ¶¶

[8] All references to statements of facts in dispute and statements of additional facts in this sub-part and the following sub-part refer to Plaintiff's statement of additional facts filed in opposition to the Entity Defendants' motion for summary judgment. *See* note 2 of this Order, *supra*.

17

23-25). Ms. Scarcelli challenged this attempt to join SNH Trust to the litigation in a motion to dismiss based on the fact that neither Ms. Gleichman nor Mr. Norberg had standing to pursue claims on behalf of SNH Trust, the minority interest holder of Stanford. (P.S.A.F. ¶ 28). Plaintiffs cite *Bank of N.Y. v. Dyer*, 2016 ME 10, ¶ 11, 130 A.3d 966 for the proposition that if a plaintiff lacks standing, that plaintiff cannot invoke the court's jurisdiction to make any adjudication on the merits. The Entity Defendants respond that *Bank of N.Y.* is inapposite because in that case, the plaintiff itself moved for dismissal without prejudice and did not dispute that it could not establish standing. *Id.* ¶ 11. The Entity Defendants point out that in the 2012 litigation, the motion to dismiss was not granted and Mr. Norberg's claims as trustee in the Counterclaim were allowed. (P.S.A.F. ¶ 28). Thus, unlike in *Bank of N.Y.*, there was a judicial determination that counterclaim plaintiff SNH Trust did have standing to bring its claim.

Regardless of any earlier disputes about standing, at the time the Stipulation of Dismissal was entered, SNH Trust was in the case and the court had jurisdiction over SNH Trust to enter its voluntary dismissal with prejudice. (S.M.F. ¶¶ 39-40). The jurisdictional issue raised now was already litigated in the motion to dismiss filed by Ms. Scarcelli in the prior lawsuit. (P.S.A.F. ¶ 28). Plaintiffs ultimately prevailed in that dispute and succeeded in joining SNH Trust as a plaintiff in their Counterclaim. Plaintiffs cannot now argue that the court reached the wrong decision on their adversaries' motion to dismiss and that it should have dismissed SNH Trust's counterclaims. *Royal Coachman Color Guard v. Marine Trading & Transp., Inc.,* 398 A.2d 382, 384 (Me. 1979) ("Once there has been full opportunity to present an issue for judicial decision in a given proceeding, *including those issues that pertain to a court's jurisdiction*, the determination of the court in that proceeding must be accorded finality as to all issues raised or which fairly could have been raised, else judgments might be attacked piecemeal and without end.") (emphasis added).

18

Based on the foregoing, the Court hereby **grants** the Entity Defendants' motion for summary judgment on Count IV, Count V, Count VI, and Count VII of the Complaint as brought by Mr. Norberg as an individual and in his capacity as Trustee for the SNH Trust against Stanford.

IV.    MS. GLEICHMAN HAS RAISED A GENUINE FACTUAL ISSUE
       AS TO WHETHER SHE HAS STANDING TO BRING THE CLAIMS IN
       COUNT IV, COUNT V, AND COUNT VI OF THE COMPLAINT

### A. The Scarcelli Defendants

The Scarcelli Defendants have moved for summary judgment as to Counts IV, V, and VI of the Complaint as to Ms. Gleichman on the grounds that Ms. Gleichman lacks standing to bring those claims because she is not a member of Stanford or Acadia. Plaintiffs do not dispute that Ms. Gleichman is not a member of Stanford. Plaintiffs dispute the assertion that Ms. Gleichman is not a member of Acadia and claim that she retains a 49% interest in that company.

Every plaintiff "must establish its standing to sue, no matter the causes of action asserted." *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 7, 96 A.3d 700. While there is "no set formula for determining standing, a court may limit access to the courts to those best suited to assert a particular claim." *Lindemann v. Comm'n on Gov'tl Ethics and Election Practices*, 2008 ME 187, ¶ 8, 961 A.2d 538 (quotations omitted). Maine statutory law provides that only "a member may maintain a direct action against another member, a manager, or the limited liability company to enforce the member's rights and otherwise protect the member's interests . . . ." 31 M.R.S.A. § 1631(1). Standing to bring derivative actions on behalf of limited liability companies in a derivative action is likewise limited only to members. 31 M.R.S.A. §§ 1632, 1633(1). Only members may apply for judicial dissolution of limited liability companies. 31 M.R.S.A. § 1595(1)(D),(E).

Plaintiffs do not argue in their opposition that Ms. Gleichman has standing to bring a direct or derivative action against Ms. Scarcelli regarding Stanford, but do allege facts suggesting such

a position in their Statement of Additional Facts. (P.S.A.F. ¶¶ 48-51). Statements of additional facts filed pursuant to M.R. Civ. P. 56(h)(2) are not the proper place for legal arguments. *See Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 4 n.2, 133 A.3d 1021. As Plaintiffs fail to address the issue in their opposition to the motion, the issue of Ms. Gleichman's standing to bring Counts IV, V, and VI with regards to Stanford is waived.

The Defendants claim that Ms. Gleichman is not a member of Acadia because she and Ms. Scarcelli both assigned all of their interest in that company to Stanford. (S.M.F. ¶ 11). In support of this position, the Scarcelli Defendants rely on a 2008 assignment document, signed by both Ms. Scarcelli and Ms. Gleichman, that purports to assign their respective interests in Acadia to Stanford. (*Id.*) Plaintiffs contest the issue of Acadia's ownership and question the authenticity of the assignment document. (P.S.F.D. ¶ 11). For her part, Ms. Gleichman has sworn that she has no memory of signing such a document and claims that if her signature is genuine the assignment was never meant to go into effect and never has. (*Id.*) Beyond Ms. Gleichman's sworn testimony, Plaintiffs point to other record evidence suggesting that Ms. Gleichman's accountant and Ms. Scarcelli's own lawyers understood Ms. Gleichman to be a minority member of Acadia after the purported 2008 assignment. (*Id.*)

This Court is thus presented with two competing versions of the truth on a factual issue material to the case. *See MP Assocs.*, 2001 ME 22, ¶ 12, 771 A.2d 1040. On the evidence provided, the Court would be required to make a credibility determination as to which version to believe, which is impermissible for summary judgment. *Id.* The Court thus rules that Plaintiffs have raised a genuine factual issue as to the membership of Acadia. Therefore, the Scarcelli Defendants' motion for summary judgment is **denied in part** as to Ms. Gleichman's claims in Counts IV, V, and VI. Ms. Gleichman can proceed on those Counts only as they relate to Acadia.

20

## B. The Entity Defendants

The Entity Defendants do not offer any alternative grounds specific to Acadia as to why Acadia is entitled to summary judgment, instead relying exclusively on the lack of standing argument raised by the Scarcelli Defendants.[9] As that argument failed for the Scarcelli Defendants so too it must fail here for the Entity Defendants. The Court thus hereby **denies** Defendant Acadia's motion for summary judgment.

## CONCLUSION

Based on the foregoing IT IS ORDERED:

(1) The Scarcelli Defendants' motion for summary judgment is **GRANTED** as to Count X.

(2) The Scarcelli Defendants' and the Entity Defendants' motions for summary judgment are **GRANTED** as to Count VII.

(3) The Scarcelli Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** as to Count IV, Count V, and Count VI.

    a. As to Plaintiff Karl Norberg's claims in Counts IV, V, and VI, the Scarcelli Defendants' motion is **GRANTED**.

    b. As to Plaintiff Pamela Gleichman's claims in Counts IV, V, and VI, the Scarcelli Defendants' motion is **GRANTED IN PART AND DENIED IN PART**. The Scarcelli Defendant's motion is **GRANTED** to the extent that Ms. Gleichman cannot proceed on those counts as they relate to Stanford. The motion is **DENIED** to the extent that Ms. Gleichman may proceed on those counts as they relate to Acadia.

(4) The Entity Defendants' motion for summary judgment is **GRANTED** as to Defendant Stanford on Counts IV, V, and VI.

(5) The Entity Defendants' motion for summary judgment is **DENIED** as to Defendant Acadia on Counts IV, V, and VI. Those counts remain pending as against Defendant

---

[9] In three sentences at the end of their reply brief, the Entity Defendants point out that Plaintiffs cite no authority to show that a LLC owes fiduciary obligations to its members. But nor do the Entity Defendants offer any authority to show that a LLC does not owe fiduciary obligations to its members. *See Wescott v. Allstate Ins.*, 397 A.2d 156, 163 (Me. 1979) ("[T]he burden of showing entitlement to summary judgment rests on the [moving party.]").

Acadia.

Accordingly, Counts IV, V, and VI of Plaintiffs' Complaint remain pending. Plaintiff Pamela Gleichman's claims against Ms. Scarcelli arising out of Ms. Scarcelli's management of Acadia, as well as her direct and derivative claims against and on behalf of Acadia, have survived Defendants' motions for summary judgment.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

_11/2/17_
**DATE**

_Michael_
**SUPERIOR COURT JUSTICE**
**BUSINESS AND CONSUMER COURT**

Entered on the Docket: _11-2-17_
Copies sent via Mail __ Electronically ✓

22

**BCD-CV-2017-11**

**Pamela W. Gleichman and Karl Norberg  v. Rosa Sarcelli, Stanford Management, LLC, Acadia Maintenance, LLC, and Preservation Holdings, LLC**

**Pamela W. Gleichman and Karl Norberg**

Counsel:  John S. Campbell, Esq.
6 Mabel St.
Portland, ME 04103

**Stanford Management, LLC and Acadia Maintenance, LLC**

Counsel:  James Wagner, Esq.
343 Ocean House Rd.
Cape Elizabeth, ME 04107

**Rosa Sarcelli and Preservation Holdings, LLC**

Counsel:  George Dilworth, Esq.
84 Marginal Way, Suite 600
Portland, ME 04101

STATE OF MAINE
CUMBERLAND, SS.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-17-11

PAMELA W. GLEICHMAN and
KARL NORBERG, individually and as
Trustee of the SCARCELLI-NORBERG
HOLDINGS TRUST,

        Plaintiffs,

v.

ROSA SCARCELLI,
STANFORD MANAGEMENT, LLC,
ACADIA MAINTENANCE, LLC,
PRESERVATION HOLDINGS, LLC, and
NORMAN, HANSON & DETROY, LLC

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON PLAINTIFFS'
MOTION TO COMPEL PRODUCTION**

Presently before the court is Plaintiffs Pamela W. Gleichman and Karl Norberg's motion to compel production of attorney's fees invoices submitted to and paid by Defendant Stanford Management, LLC.

## I.    Background

Plaintiffs Gleichman and Norberg, in his individual capacity and as trustee of the Scarcelli-Norberg Holdings Trust (the "SNH Turst"), have brought a complaint asserting more than twenty counts against Defendants Rosa Scarcelli, Stanford Management, LLC ("Stanford"), Acadia Maintenance, LLC, Preservation Holdings, LLC, and the law firm Norman, Hanson & DeTroy, LLC. (*See generally* 2d V. Am. Compl.) Generally speaking, the complaint arises out of an ongoing dispute between Plaintiffs and Scarcelli over the management of and the use funds from several closely-held entities. *Id.*

Plaintiffs sought production of attorney's fee invoices from two firms, Defendant Norman, Hanson & DeTroy, LLC and Bernstein Law Firm, LLC located in Chicago, that were paid by Stanford. (Pls. Mot. Compel 1.) According to Plaintiffs, Scarcelli has refused to produce the invoices, claiming attorney-client privilege. (*Id.*) Following a Rule 26(g), the court entered an order instructing Plaintiffs to submit a written motion setting forth its arguments and Defendants to submit their opposition. Pursuant to the court's instructions, Plaintiffs submitted their motion to compel on June 5, 2017. Defendants filed their opposition on June 19, 2017. No reply was filed.

Plaintiffs contend that Scarecelli, as the Manager of Stanford, has for several years impermissibly intermingled her personal legal bills with Stanford's legal bills and has used Stanford's funds to pay her personal legal expenses. (*Id.*) Defendants disclosed the amounts of legal fees paid by Stanford, but refused to produce the invoices. (*Id.* at 2-3.) Plaintiffs expect Scarcelli will claim to not know what the bills were for or that the invoices were for "corporate matters." (*Id.* at 3-4.) Plaintiffs contend that the actual invoices are necessary to confronting such responses. (*Id.* at 4.) Plaintiffs argue the attorney's fees invoices are not protected by the attorney-client privilege for several reasons: (1) attorney billing records are generally not privileged communications; (2) Plaintiffs are entitled to review the invoices as minority owners of Stanford; (3) only Scarcelli is asserting the privilege and the invoices are not confidential communications between Scarcelli and her attorney; (4) the invoices are not protected under the "fiduciary-duty exception"; and (5) any privilege has been waived. (*Id.* 5-8.) Defendants contend that the attorney's fees invoices are protected by both the attorney-client privilege and the attorney work-product doctrine, that "fiduciary-duty exception" is not applicable under Maine law, and that there has been no waiver of the privilege. (*Id.* at 3-9.)

2

## II. Standard of Review

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action,..." M.R. Civ. P. 26(b)(1). If an opposing party fails to respond to a discovery request, the discovering party may move for any order compelling the opposing party to respond. M.R. Civ. P. 37(a)(2). If the court denies the motion in whole or in part, the court may issue protective orders to shield the party from whom discovery is sought from any undue burden or expense. M.R. Civ. P. 26(c), 37(a)(2).

Under Maine Rule of Evidence 502, a client has the privilege to refuse disclosure of and prevent their attorney from disclosing the contents of any confidential communication between the client or the client's representative and the client's attorney or the attorney's representative. M.R. Evid. 502(b). Regarding legal entities, an officer, manager, trustee, or other agent authorized to act on behalf of a legal entity in legal matters or in obtaining an attorney's service may claim the privilege on behalf of the entity. M.R. Evid. 502(c)(1)(D). The party asserting the privilege has the initial burden of demonstrating its applicability. *Harris Mgmt. v. Coulombe*, 2016 ME 166, ¶ 24, 151 A.3d 7. A communication is "confidential" and protected by the privilege if it is (1) made to facilitate the rendition of legal services to the client, and (2) not intended to be disclosed to any third party other than those to whom the client revealed the information in the process of obtaining professional legal services. M.R. Evid. 502(a)(5); *see Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶ 11 n.1, 974 A.2d 918.

The attorney-client privilege is subject to several exceptions enumerated in Rule 502: (1) the crime-fraud exception, (2) claims through the same deceased client, (3) breach of duty by an attorney or client, (4) documents attested by an attorney, (5) joint clients, and (6) public officers and agencies. M.R. Evid. 502(d). The opposing party bears the burden of demonstrating the

3

applicability of any exception to the privilege. *Harris Mgmt.*, 2016 ME 166, ¶ 24, 151 A.3d 7. The attorney-client privileged may also be waived if a person entitled to assert the privilege "voluntarily discloses or consents to the disclosure of any significant part of the privileged matter." M.R. Evid. 510(a). "A privilege is waived when a 'significant part' or 'key element' of the privileged communication has been disclosed by the party claiming entitlement to the privilege." *Jensen v. S.D. Warren Co.*, 2009 ME 35, ¶ 31, 968 A.2d 528 (internal citation omitted).

Attorney work product is also protected from disclosure under Maine Rule of Civil Procedure 26. 2 Harvey, *Maine Civil Practice* § 26:6 at 639-40 (3d ed. 2011). "[A] party may obtain discovery of "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" only upon a showing that (1) the party seeking discovery has a "substantial need" for the materials in the preparation of the their case and (2) the party is unable to obtain the "substantial equivalent of the materials by other means" without "undue hardship." M.R. Civ. P. 26(b)(3). Generally, in order to be protected by the work-product doctrine, a document must be "created because of the party's subjective anticipation of future litigation." *Springfield Terminal Ry. Co. v. Dept. of Transp.*, 2000 ME 126, ¶ 16, 754 A.2d 353. The anticipation of litigation must also be "objectively reasonable." *Id.* Thus, the opposing party must show "that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *Id.* ¶ 17. A document prepared in the regular course of business may also be prepared in anticipation of litigation, when it is party's business "to prepare for litigation." *Harriman v. Maddocks*, 518 A.2d 1027, 1034 (Me. 1986). In ordering discovery of attorney work product, "the court shall

4

protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." M.R. Civ. P. 26(b)(3).

### III. Discussion

#### A. Attorney Billing Records May Contain Confidential Communications

As an initial matter, "fees paid for legal work and the general nature of legal work performed do not constitute a 'confidential communication' and are, therefore, outside the privilege." *United States v. Osborn*, 409 F. Supp. 406, 411 (D. Or. 1975) (citations omitted). However, "descriptions of services performed by an attorney necessarily intrude upon the area of confidential communication when they become more specific than the general responses, such as 'litigation', 'drafting of documents', or 'tax advice',..." *Id.* Thus, the invoices sought by Plaintiffs or portions thereof may be protected by the privilege if they contain descriptions of the legal services rendered that reveal confidential communications. *See also In re Crescent Beach Inn*, 37 B.R. 894, 896 & n.1 (Bankr. D. Me. 1984).

#### B. Plaintiffs are not Entitled to the Invoices as Minority Members of Stanford

At various times in their motion, Plaintiffs appear to suggest that either they together or Gleichman individually are the minority members of Stanford. The Stanford Management, LLC Amended and Restated Operating Agreement (the "Operating Agreement") expressly names Scarcelli as the 51% member and Gunnar Falk as trustee of SNH Trust as the 49% member of Stanford. (Defs. Ex. A § 2.8 & Ex. A.) According to Plaintiffs' verified complaint, Norberg became the sole trustee of the SNH Trust in 2009. (V. 2d Am. Compl. ¶¶ 5-6.) Gleichman is the lifetime beneficiary of the SNH Trust. (*Id.* ¶ 5.) Thus, neither Gleichman nor Norberg in his individual capacity are minority members of Stanford. Only Norberg in his capacity as trustee of the SNH Trust is the 49% member of Stanford. Although the Operating Agreement permits

5

members to request and obtain true and full information regarding the state of the business, its financial condition, and other information that is just and reasonable, the Operating Agreement expressly states, "The Manager shall have the **absolute discretion to withhold any information from a Member** ... that the Manager deems to be in the nature of trade secrets or confidential information, the disclosure of which would not be in the best interest of the Company." (Defs. Ex. A § 5.6) (emphasis supplied). Thus, the Operating Agreement grants Scarcelli as manager of Stanford the absolute discretion to withhold the attorney's fees invoices from Norberg and the SNH Trust, so the Court rejects Plaintiffs' argument that they are entitled to the documents because they are minority shareholders.

C.   The "Fiduciary-Duty Exception" to the Attorney-Client Privilege

The "fiduciary-duty exception" to the attorney-client privilege advocated by Plaintiffs is not among the recognized exceptions enumerated in Rule 502. *See* M.R. Evid. 502(d). Plaintiffs have not cited, and the court is not aware of, any Maine case law recognizing a "fiduciary-duty exception" to the attorney-client privilege. (Pls. Mot. Compel 6-7.) The court declines to adopt a new exception to the attorney-client privilege not expressly enumerated in the Maine Rules of Evidence.

D.   The Client Asserting the Privilege

Only the client may assert the attorney-client privilege. M.R. Evid. 502(b). Neither parties have been perfectly clear about who is asserting the attorney-client privilege and whether they are asserting the privilege for all or some the attorney's fees invoices sought. In their motion, Plaintiffs contend that only Scarcelli's personal attorney has asserted the privilege on her behalf. (*Id.* at 4-5.) Plaintiffs argue that Scarcelli cannot assert the privilege because the invoices sought are not communications between Scarcelli and her attorneys; they are simply

6

bills paid by Stanford. (*Id.* at 5-6.) However, this contention is contradicted by Plaintiffs' assertion that all or some of the invoices are Scarcelli's personal legal bills. (*Id.* at 1-2.) As discussed above, attorney fee's invoices may be protected by the privilege if they contain descriptions of confidential communications. Thus, Scarcelli may be entitled to assert the attorney-client privilege with regard to any personal legal bills that contain descriptions of confidential communications.[1]

Moreover, it appears that Stanford has also asserted the attorney-client privilege. The Operating Agreement permits Scarcelli, as the sole manager, to exercise all powers of Stanford. (Defs. Ex A § 5.1(a).) As discussed above, a manager authorized to act on behalf of a legal entity may claim the attorney-client privilege for the entity. M.R. Evid. 502(c)(1)(D). Therefore, Scarcelli in her capacity as manager may assert the privilege for Stanford. Defendants' opposition was filed on behalf of Defendants Scracelli, Stanford, and Preservation Holdings, LLC by Scarcelli and Preservation Holding's attorneys.[2] (Defs. Opp'n Mot. Compel 1.) The motion was co-signed on behalf of Stanford's separate counsel. (*Id.* at 11.) Therefore, Stanford has sufficiently asserted the attorney-client privilege with regard to any of its attorney fee's invoices that contain descriptions of confidential communications between Stanford and its attorney. Stanford cannot assert the privilege for any of Scarcelli's personal legal bills as it was likely not the client in those communications.

---

[1] Whether Scarcelli has waived the privilege by submitting her personal attorney's fees invoices to Stanford is discussed below.

[2] It is not clear to the court why Preservation Holdings has joined Defendants' opposition. Plaintiffs' motion to compel makes no mention of Preservation Holdings and does not seek to compel the production of any documents from Preservation Holdings. (Pls. Mot. Compel 1.) Plaintiffs seek to compel only invoices paid by Stanford. (*Id.*) Defendants assert in a footnote that Plaintiffs also are seeking documents from Preservation Holdings that are protected by the attorney-client privilege. (Defs. Opp'n Mot. Compel 1.) Defendants provide no support for this assertion and do not address Preservation Holdings further. The court declines to address Preservation Holdings' claim of privilege.

7

E.     Waiver of the Privilege

As noted above, a client waives the privilege if he or she "voluntarily discloses or consents to the disclosure of any significant part of the privileged matter." M.R. Evid. 510(a). Plaintiffs contend that Scarcelli waived any privilege when she intermingled her legal bills with Stanford's legal bills. (Pls. Mot. Compel 8-9.) In their opposition, Defendants point out that Scarcelli is entitled to indemnification for any acts performed within the scope of her authority as manager of Stanford under the Operating Agreement. (Defs. Opp'n Mot. Compel 8); (see Defs. Ex. A § 5.5(b).) Though unclear, it appears Defendants are suggesting that Scarcelli submitted her personal legal bills to Stanford for payment under this indemnification provision. If Scarcelli has submitted her personal attorney fee's invoices to Stanford, then Scracelli may have waived the attorney-client privilege by voluntarily disclosing the contents of confidential communication with her personal attorney to Stanford. On the other hand, if the invoices submitted to Stanford describe confidential communications by Scarcelli in her role as manager, the privilege may not have been waived as to those communications. However, neither party has provided the court with sufficient evidence to make such a determination.[3]

F.     Defendants have not met their Burden

As discussed above, the party asserting the privilege has the burden of demonstrating its applicability. *Harris Mgmt.*, 2016 ME 166, ¶ 24, 151 A.3d 7. Based on the record presently before the court, Defendants Scarcelli and/or Stanford have not met that burden. In their opposition, Defendants simply assert that invoices sought Plaintiffs "contain detained descriptions of conversations and email communications between attorneys and Ms. Scarcelli regarding legal advice and reveal the specific topics or issues discussed. The invoices go far

---

[3] There is no suggestion that Stanford has waived its privilege by disclosing any of its attorney fee's invoices to a third-party.

8

beyond describing the general nature of the work performed by the attorneys." (Defs. Opp'n Mot. Compel 4.) Defendant further assert that, even if the invoices contain some non-privileged information, the non-privileged information is minimal and would not justify the undue and expensive burden of redacting the invoices. (*Id.* at 5 n.3.) Defendants also assert that invoice are separately protected by the work-product doctrine because they "contain specific details about the research and development of legal theories, opinions, and strategies for the client." (*Id.* ¶ 10.)

Defendants have not provided the court with any affidavits, a privilege log, or other supporting evidence. The court cannot deny Plaintiffs' motion based solely Defendants' unsupported assertions in its opposition memorandum. Based on the present record, the court is unable to determine whether the documents contain information protected by either the attorney-client privilege or the work-product doctrine, whether any such privilege has been waived under the circumstances, and whether redaction of privileged information would be an undue burden. Therefore, the court shall require Defendants to produce the attorney's fees invoices for *in camera* review so that the court may be able to make such determinations. They must produce any document to which they assert a privilege and indicate which privilege, or both, they are asserting as to it.

IV.    Conclusion

Defendants shall submit for *in camera* review the attorney's fee invoices from Norman, Hanson & DeTroy, LLC and the Bernstein Law Firm, LLC that were paid by Stanford Management, LLC that Defendants assert are protected by the attorney-client-privilege and/or work-product doctrine.

9

Pursuant to Maine Rule Civil Procedure 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated    6 / 30 / 17

_____
M. Michaela Murphy
Justice, Business and Consumer Court

**Pamela W. Gleichman, et al. v. Rosa Scarcelli, et al.**

**BCD-CV-17-11**

### Pamela W. Gleichman and Karl Norberg
### Plaintiffs

Counsel:     John Campbell, Esq.
        60 Mabel Street
        Portland, ME  04103

### Preservation Holdings, LLC and Rosa Sarcelli
### Defendants

Counsel:     George Dilworth, Esq.
        84 Marginal Way, Suite 600
        Portland, ME 04101-2480

### Norman Hanson and Detroy, LLC
### Defendant

Counsel:     Clifford Ruprecht, Esq.
        66 Pearl Street, Suite 200
        Portland, ME 04101

### Acadia Maintenance, LLC and Stanford Management, LLC
### Defendant

Counsel:     James R. Wagner, Esq.
        343 Ocean House Road
        Cape Elizabeth, ME 04107

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-17-11 ✓

PAMELA W. GLEICHMAN et al., )
)
Plaintiffs, )
)
v. )
)
ROSA SCARCELLI, et al., )
)
Defendants. )

**ORDER ON DEFENDANT
NORMAN HANSON & DETROY,
LLC'S MOTION FOR SUMMARY
JUDGMENT**

Defendant Norman Hanson & DeTroy, LLC ("NHD") has moved for summary judgment pursuant to M.R. Civ. P. 56(c) on the remaining claims brought against it by Plaintiffs Pamela W. Gleichman and Karl Norberg, both individually and in his capacity as Trustee of the Scarcelli-Norberg Holdings Trust ("SNH Trust") (hereafter collectively "Plaintiffs"). Plaintiffs opposed the motion. The Court heard oral argument on the motion on September 14, 2017. Counsel for both parties appeared and were heard.

## PROCEDURAL HISTORY[1]

### I. Parties

This motion comes before the Court in the context of a history of litigation between Plaintiffs and Defendant Rosa Scarcelli, who is Pamela Gleichman's daughter and Karl Norberg's step-daughter. (Plaintiff's Statement of Additional Facts ("P.S.A.F.") at ¶ 1.) Ms. Gleichman is the grantor and lifetime beneficiary of the SNH Trust; Mr. Norberg is its trustee. (P.S.A.F. ¶ 15.)

Ms. Gleichman founded two property companies: Defendant Stanford Management, LLC

---

[1] The facts in this section are drawn from the parties' Statements of Facts filed in support of their briefing on this motion. The information in this section is meant solely to provide context for the procedural posture of this case and nothing herein should be construed as a finding of fact by the Court.

1

("Stanford") and Defendant Acadia Maintenance, LLC ("Acadia"). (P.S.A.F. ¶ 1.) Today, Ms. Scarcelli owns 51% of Stanford; SNH Trust owns 49%. (Defendant's Statement of Undisputed Material Facts ("S.M.F.") at ¶ 22.) Acadia's ownership is disputed; Defendants claim it is owned 100% by Stanford while Plaintiffs allege Ms. Gleichman retains a 49% ownership interest in the company.[2] (S.M.F. ¶ 21; Plaintiff's Statement of Facts in Dispute ("P.S.F.D.") at ¶ 21.) Ms. Scarcelli manages both companies. (P.S.A.F. ¶¶ 1, 15.) NHD is a law firm that has served as legal counsel to Ms. Scarcelli individually and on behalf of Stanford. (S.M.F. ¶¶ 6-8, 11-14.) It is disputed whether NHD has served as counsel to Acadia.[3] (S.M.F. ¶ 20; P.S.F.D. ¶ 20.)

## II.    NHD Motion for Judgment on the Pleadings and the Present Motion

Plaintiffs alleged various causes of action against NHD arising out of its representation of Ms. Scarcelli, Stanford, and Acadia in the 22 counts of their Second Verified Amended Complaint ("Amended Complaint"). NHD was granted judgment on the pleadings as to Count VIII (conversion) and Count XI (abuse of process) of the Amended Complaint, and Count XVI ("punitive damages") was dismissed as to NHD, in the Court's Order entered December 15, 2016, granting in part and denying in part NHD's motion for judgment on the pleadings.

NHD now moves this Court to grant summary judgment in its favor on three of the remaining Counts against it: Count XVII, which alleges professional negligence; Count XVIII, which alleges both that NHD breached its own independent fiduciary duty to Plaintiffs and that NHD aided and abetted Ms. Scarcelli in breaching her fiduciary duty to Plaintiffs; and Count XIX, which alleges negligent infliction of emotional distress. *See* Amended Complaint.

---

[2] The resolution of this disputed fact is unnecessary in deciding the present motion.

[3] This factual dispute is likewise immaterial to the present motion.

2

## BACKGROUND FACTS

NHD was involved in a failed exercise at reconciliation between the parties to this lawsuit in Fall 2008 whereby they attempted to bring some peace to their acrimonious relationship by redrafting the Operating Agreements for Stanford and Acadia. (P.S.A.F. ¶¶ 4-6.) Majority ownership and control of these companies had been transferred to Ms. Scarcelli in January of 2007. (P.S.A.F. ¶ 1.) NHD claims that it was serving only as counsel to Ms. Scarcelli in this process. (S.M.F. ¶ 6.) Plaintiffs allege that it can be implied from the facts that they too were represented by NHD in the redrafting exercise. (P.S.A.F. ¶¶ 4-6.) NHD continued to represent Ms. Scarcelli from 2008 until at least 2012; it is not clear from the record whether NHD continues to serve as counsel to Ms. Scarcelli personally at present on matters apart from this lawsuit. (S.M.F. ¶¶ 6, 8; P.S.A.F. ¶¶ 7-9, 35).

## STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). A material fact is one capable of affecting the outcome of the litigation. *Savell v. Duddy*, 2016 ME 139, ¶ 19, __ A.3d __. A genuine issue exists where the jury would be required to "choose between competing versions of the truth." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040.

To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *See Savell*, 2016 ME 139, ¶ 18, __ A.3d __. A plaintiff cannot create a factual dispute for purposes of defeating summary judgment merely by raising "conclusory allegations, improbable references, and unsupported speculation[,]" even where "concepts such as motive or intent are issue." *Dyer v. D.O.T.*, 2008 ME 106, ¶ 14, 951 A.2d 821.

3

## DISCUSSION

### I.    DIRECT CLAIMS

All three remaining Counts against NHD involve direct claims.[4] Count XVII also includes a derivative claim whereby the Plaintiffs purport to bring a suit for professional malpractice against Defendant NHD on behalf of Defendant Stanford and Defendant Acadia; Count XVIII includes an aiding and abetting claim whereby Plaintiffs allege that NHD aided and abetted Ms. Scarcelli in breaching her fiduciary duty to Plaintiffs (collectively, the "Indirect Claims").[5] For organizational purposes, the Court will first discuss the direct claims of all three Counts before moving on to the Indirect Claims.

#### A. Rules of Law: Attorney-Client Relationship and Fiduciary Duties Owed by Attorneys to Third Parties

"[A]n attorney-client relationship is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *Bd. of Overseers of the Bar v. Mangan*, 2001 ME 7, ¶ 9, 763 A.2d 1189. An attorney-client relationship "may be implied from the conduct of the parties." *Bd. of Overseers of the Bar v. Dineen*, 500 A.2d 262, 264-65 (Me. 1985). An attorney for a business entity does not have an attorney-client relationship with its officers, directors, or shareholders simply by virtue of its representation of the entity. *See generally Savell v. Duddy*, 20016 ME 139, 147 A.3d 1179.

In general, "an attorney owes a duty of care to only his or her client." *Savell v. Duddy*, 2016

---

[4] See Note 5 *infra*.

[5] The Court uses this term only as an organizational tool to distinguish the claims discussed in Part II of this Order from those discussed in Part I. Several Counts of the Amended Complaint allege multiple grounds for liability and the Court distinguishes them this way as a matter of cognitive convenience. It is not used as a legal term of art.

ME 139, ¶ 20, 147 A.3d 1179 (citing *Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 21, 105 A.3d 439). Only in "limited and rare situations" may this Court find that an attorney owes a duty of care to a "limited class of nonclients." *Cabatit*, 2014 ME 133, ¶ 21, 105 A.3d 439. Specifically, the Court may find a duty where that attorney's services are intended to benefit a third party and public policy considerations support such a finding. *Id.* However, an attorney will never owe a duty to a nonclient "if that duty would conflict with the attorney's obligations to his or her clients." *Id.* (citing *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 11, 54 A.3d 710).

B. Norman Hanson DeTroy Has Never Had an Attorney-Client Relationship with Any Plaintiff During the Statutory Period

Ms. Gleichman and Mr. Norberg concede that NHD has never served as their personal counsel. They nonetheless claim that a factual dispute remains over whether an attorney-client relationship can be implied from NHD's role in drafting revised operating agreements of Stanford and Acadia in Fall 2008. This provides the grounds for Plaintiffs direct claim for professional negligence in Count XVII, as well as their direct claim for breach of fiduciary duty in Count XVIII.

The Court need not reach the issue of whether an attorney-client relationship can be implied from NHD's representation of Stanford in redrafting Stanford and Acadia's operating agreements, because it lies beyond the six-year statute of limitations for actions against attorneys, which accrues at the time of the alleged violation of duty. *See* 14 M.R.S.A. §§ 752, 753-B(1). Any factual dispute as to whether an attorney-client relationship may be implied from NHD's involvement in the negotiation or drafting of Stanford and Acadia's operating agreements in Fall 2008 is thus immaterial.

Plaintiffs raise two answers to the statute of limitations issue: first, that the burden was on NHD to raise the statute of limitations in their motion; second, that NHD's implied representation of Plaintiffs continued beyond the 2008 redrafting of Stanford's operating agreement. This first

5

argument conflates two procedural windows and their respective burdens. The burden was on Defendant to raise the defense of the statute of limitations in its Answer to the Amended Complaint. *See* M.R. Civ. P. 8(c). NHD, in fact, did raise the defense on Page 31 of their Answer to the Amended Complaint.

The second argument is merely a bald assertion, made for the first time in earnest in Plaintiffs' Opposition to the present motion. At oral argument, Plaintiffs were unable to articulate facts that could give rise to an implied attorney-client relationship within the statute of limitations; in their Statement of Additional Facts, Plaintiffs concede that they allege NHD represented them only during the 2008 redrafting exercise. *See* P.S.F.D. ¶¶ 7, 23; P.S.A.F. ¶¶ 4-9 (detailing Plaintiffs' view of the 2008 redrafting; conceding that Plaintiffs had independent counsel during later disputes). The Court thus rules that there is no dispute of material fact that NHD has never served as legal counsel to the Plaintiffs within the statutory period.

C. <u>Norman Hanson Detroy Did Not Owe Plaintiffs Fiduciary Duties as Third-Parties</u>

Plaintiffs counter that even if this Court does not find that there is any material factual dispute over whether NHD ever shared an attorney-client relationship with Plaintiffs, that there nonetheless is a genuine factual dispute over whether NHD owed a continuing fiduciary duty to Plaintiffs under a non-client third-party beneficiary theory.

Plaintiffs argue that a reasonable jury could find that NHD owed a duty to Plaintiffs because they have an ownership interest in and founded Stanford; Stanford operated properties owned by Plaintiffs or their entities; and Stanford was majority-owned and managed by Ms. Scarcelli, who was likewise represented by NHD individually.

Plaintiff cites no authority to support a finding of a third-party duty under these facts, and this Court could find none. Indeed, our Law Court has been explicit that an attorney owes a

6

fiduciary duty to a third party only in the rare and limited circumstances where the representation is *intended* to benefit a third party and policy considerations support finding such a duty. *See Cabatit*, 2014 ME 133, ¶ 21, 105 A.3d 439. Here, Plaintiffs have not alleged that they were the intended beneficiary of NHD's representation of Stanford or Ms. Scarcelli. Plaintiffs' relationship to Stanford is simply too attenuated for a reasonable juror to conclude that NHD's representation of Stanford was intended to be for the benefit of Plaintiffs.

Furthermore, the policy considerations in this case militate against finding NHD owed Plaintiffs a fiduciary duty. Our Law Court has held that an attorney will never owe a duty to a third party where it would conflict with the attorney's duty to her client. *Id.* There is no genuine factual dispute that Plaintiffs' interests have been adverse to Ms. Scarcelli and Stanford at many times during the statutory period, notwithstanding Plaintiffs' purported interest in Stanford. Finding that NHD nonetheless owed a duty to these Plaintiffs is incompatible with our adversarial form of justice and as such has been properly forbidden by our Law Court.

In sum, there is no genuine dispute of fact over whether NHD has served as counsel to Plaintiffs or whether an attorney-client relationship could be implied between NHD and Plaintiffs during the statutory period. Likewise, there is no genuine factual dispute over whether NHD has ever owed a fiduciary duty to Plaintiffs as third parties. Defendant NHD is entitled to judgment as a matter of law as to the direct claim of professional negligence in Count XVII and the direct claim for breach of fiduciary duty in Count XVIII.

D. Norman Hanson DeTroy Did Not Owe Plaintiffs a Duty to Protect Them from Emotional Distress

In Count XIX, Plaintiffs allege that NHD is liable to Ms. Gleichman and Mr. Norberg personally for causing them emotional distress. Mr. Norberg cannot bring such a claim in his capacity as trustee for NSH Trust because trusts are incapable of emotional distress. Plaintiffs

7

allege that NHD reasonably should have foreseen that Ms. Gleichman and Mr. Norberg would suffer emotional distress as a result of NHD's representation of Ms. Scarcelli, Stanford, and Acadia.

Generally speaking, persons do not owe one another a duty to exercise due care to avoid causing emotional distress. *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18. The Court knows of no case where our Law Court (or any other Maine court) has held that an attorney owes a nonclient a duty to exercise reasonable care to avoid causing the nonclient emotional harm, and Plaintiffs have not drawn the Court's attention to any. Maine law only allows claims for negligent infliction of emotional distress by clients against attorneys, and even then such claims are reserved for cases of egregious attorney misconduct or personal losses beyond the economic. *Garland v. Roy*, 2009 ME 86, ¶ 24, 976 A.2d 940.

Plaintiffs offer no policy argument for why negligent infliction of emotional distress liability should be extended to nonclients, but instead urge the Court to find that such liability should lie in this case because it is "a very personal matter; a closely held, family business." Opposition at 15. But the family context illustrates precisely why negligent infliction of emotional distress should never extend to nonclients. Practitioners of family law would feel reticent to zealously advocate for their clients under the looming threat of liability for negligent infliction of emotional distress to opposing parties. Cross-examination in any hearing would lose its fact-finding functionality as lawyers might choose not to ask relevant questions out of fear that they may upset the witness. In sum, a lawyer's duty to exercise due care to avoid causing emotional distress to third parties would inevitably conflict with the lawyer's duty to advocate for her client: exactly the result that the Law Court has been explicit about avoiding. *See Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 11, 54 A.3d 710.

8

For these reasons, the Court holds that there are no facts in the summary judgment record to establish liability for Defendant NHD to Plaintiffs Ms. Gleichman and Mr. Norberg for emotional distress, and Defendant NHD is entitled to judgment as a matter of law as to Count XIX. Therefore, the Court hereby **grants** Defendant NHD's motion as to Count XIX and grants judgment in its favor.

## II.    INDIRECT CLAIMS

### A. Derivative Claim: Professional Negligence Claim on Behalf of Stanford

In Count XVII, Plaintiff Mr. Norberg purports to bring a derivative suit against NHD on behalf of Defendant Stanford in his capacity as trustee of NSH Trust, which is a minority owner of Stanford. [Plaintiffs also purport to bring a derivative suit against Acadia, although they do not clearly articulate which Plaintiff would have standing to bring such a suit. Presumably, Plaintiffs claim standing under Ms. Gleichman's disputed ownership interest in Acadia.]

"In a shareholder's derivative suit, the wrong complained of is to the corporation, and the shareholder is merely a nominal plaintiff." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989). Maine's derivative action rules require derivative plaintiffs be situated to "fairly and adequately represent the interests of the members similarly situated in enforcing *the right of the association*." M.R. Civ. P. 23B (emphasis added). In discussing the analogous federal requirement, the Supreme Court has explained that it is "intended to prevent shareholders from suing in the place of the [company] in circumstances where the action would disserve the legitimate interests of the company or its shareholders." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 532 n.7 (1984) (citation omitted). Courts in other jurisdictions have further clarified that the derivative plaintiff "owes the [company] his undivided loyalty[;]" uncolored by ulterior motives, personal interests, or a personal agenda. *Fere v. Erickson & Sederstrom, P.C.*, 718 N.W.2d 501 (Neb. 2006).

9

While Mr. Norberg's motives in pursuing this derivative claim presents a factual issue, on the record as a whole there can be no dispute that the claims Mr. Norberg asserts against NHD are not claims of a breach of duty to Stanford. Nowhere do Plaintiffs allege NHD mishandled the discrete legal matters it has been handling for Stanford since 2015. Instead, Mr. Norberg complains that NHD, on Stanford's behalf, took positions that were adverse to SNH Trust. Mr. Norberg's position is that in representing Stanford in litigation brought against it, NHD owed Stanford a duty to refuse to fend off the claims Plaintiffs brought against Stanford. Following Plaintiffs logic, once these Plaintiffs sued Stanford, no lawyer could defend Stanford, because to do so would be to support the oppression of the minority owner. It cannot be the case that business associations are not entitled to representation whenever they are sued derivatively by an owner, member, or shareholder.

It is unclear from the Amended Complaint and Plaintiffs' briefing on the present motion to what extent the Plaintiffs also purport to be bringing a derivative cause of action against NHD on behalf of Acadia based on Ms. Gleichman's assertion that she retains a 49% interest in that company. *See* Amended Complaint, ¶¶ 254-257. The Court notes that the issue of Acadia's ownership—and whether NHD has ever represented Acadia—remains in dispute. Nonetheless, further factual development on these issues is unnecessary because the claim can still be disposed of on summary judgment. If Ms. Gleichman is indeed purporting to bring a derivative claim against NHD on behalf of Acadia, this claim must fail as a matter of law regardless for the same reasons Mr. Norberg's claim against NHD on behalf of Stanford as trustee of the SNH Trust must fail. These reasons, explained above in this same Part, need not be repeated here.

Having already ruled in favor of Defendant NHD as to the direct claim in Count XVII, the Court hereby **grants** Defendant NHD's motion for summary judgment as to Count XVII and grants

10

judgment in its favor.

### B. Aiding and Abetting Claim: NHD Cannot be Liable to Plaintiffs for Aiding and Abetting Ms. Scarcelli in Allegedly Violating her Fiduciary Duties

In Count XVIII, Plaintffs allege that, in the course of its representation of Ms. Scarcelli, NHD aided and abetted Ms. Scarcelli in breaching her fiduciary duty to them. Defendant Ms. Scarcelli has also moved for summary judgment on this Count; if she were to prevail, Defendant NHD would likewise prevail on the underlying aiding and abetting claim. However, the Court need not rule on Ms. Scarcelli's motion to decide the instant motion.

As this Court has consistently stated in this Order, an attorney will never owe a duty to a nonclient "if that duty would conflict with the attorney's obligations to his or her clients." *Cabatit*, 2014 ME 133, ¶ 21, 105 A.3d 439. The Court has explained the policy rationale underpinning this rule elsewhere in the Order. *See, e.g.*, Parts I.D.-E., *supra*.

If a claim like Plaintiffs' were allowed, it would improperly interfere with the attorney-client relationship. Ms. Scarcelli has an interpretation of her obligation under Stanford and Acadia's operating agreements, and she retained NHD as counsel to defend her interests in disputes with Ms. Gelichman and Mr. Norberg with respect to those agreements. If Plaintiffs are correct that Ms. Scarcelli's interpretation of her obligations was wrong and that her actions breached a fiduciary duty owed to Plaintiffs, that is between her and Plaintiffs. But to allow Plaintiffs' claim of aiding and abetting breach of fiduciary duty is to interpose Ms. Scarcelli's litigation adversaries between her and her litigation counsel in precisely the way Maine law forbids. *See Cabatit*, 2014 ME 133, ¶ 21, 105 A.3d 439. Even if Ms. Scarcelli were wrong in her interpretation of the operating agreement, Plaintiffs cannot hold NHD liable for aiding and abetting Ms. Scarcelli by defending her interpretation of that agreement.

Plaintiffs cite to numerous decisions in other jurisdictions where courts have held that an

11

injured plaintiff may bring suit against an attorney for aiding and abetting her client in causing the injury. The Court has reviewed the cases cited and found that many are either distinguishable on their facts or do not stand for the broad application of aiding and abetting liability that Plaintiffs urge in this case. To the extent that any of the cases cited would extend liability to Plaintiffs in this case, the Court declines to follow them for the policy reasons explained above.

In conclusion, there are no facts in the summary judgment record which could support a judgment for Plaintiffs as to the aiding and abetting claim against NHD in Count XVIII. Having already disposed of the direct claim for breach of fiduciary duty in Part I, *supra*, of this Order, the Court hereby also rules that Defendant NHD is not liable to Plaintiffs for aiding and abetting Ms. Scarcelli in breaching her fiduciary duty to Plaintiffs on the facts presented in the summary judgment record, and Defendant NHD is therefore entitled to judgment as a matter of law on Count XVIII. Defendant NHD's motion is hereby **granted** as to Count XVIII and the Court grants judgment in its favor.

## CONCLUSION

Based on the foregoing, the Court **grants** Defendant NHD's motion for summary judgment as to all Counts remaining against it.

IT IS SO ORDERED:

Judgment is to be entered in favor of Defendant NHD on Count XVII (professional negligence), Count XVIII (breach of fiduciary duty), and Count XIX (negligent infliction of emotional distress).

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

12

Dated: 9/26/17

M. Michaela Murphy, Justice
Business and Consumer Court

Entered on the Docket: 9/26/17
Copies sent via Mail___Electronically ✓

13